UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL V. MCMAKEN, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GREATBANC TRUST COMPANY,**<br><br>**Defendant.** | Case No. |

## COMPLAINT

Plaintiff Michael V. McMaken, by his undersigned attorneys, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan and similarly situated participants in the Plan, and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiff Michael V. McMaken ("Plaintiff") brings this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the Chemonics International, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Chemonics International, Inc. ("Chemonics") on July 7, 2011.

2. Plaintiff is a participant in the Plan and is vested in shares of Chemonics allocated to his account in the Plan.

1

3. This action is brought under Sections 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1106, 1109, and 1132(a), for losses suffered by the Plan, and other relief, caused by GreatBanc when it authorized the Plan to buy shares of Chemonics for more than fair market value.

4. As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from GreatBanc's violations of ERISA's prohibited transaction rules.

5. Chemonics is and was at all relevant times a privately-held company and the Plan's sponsor. The Plan was adopted effective January 1, 2001, and held a minority interest in Chemonics until July 7, 2011. On July 7, 2011, the Plan purchased from party in interest sellers—shareholders who included Chemonics directors and officers (the "Sellers")—the remaining 792,942 outstanding shares of Chemonics common stock for an aggregate price of $216,124,272, of which 18,344 shares were purchased outright and 774,598 shares were financed by the Sellers with a note that bore 3.86% interest per annum and was to be repaid over a 20 year period (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, Chemonics became 100% employee owned.

6. GreatBanc represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority over whether to go through with the ESOP Transaction.

7. The ESOP Transaction allowed the Sellers to unload their interests in Chemonics at an inflated price, and saddle Plan participants with millions of dollars of debt to finance the Transaction. GreatBanc failed to fulfill its duties as Trustee to the Plan and Plan participants, including Plaintiff.

8. Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by him and similarly situated participants, resulting from GreatBanc's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

## JURISDICTION AND VENUE

9. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require GreatBanc to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

10. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant GreatBanc is headquartered in this District and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

12. Plaintiff Michael V. McMaken has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff McMaken resides in Fredericksburg, Virginia. Plaintiff McMaken was the Director of Safety and Security at Chemonics. He is vested in shares of Chemonics in his Plan account.

13. Defendant GreatBanc is one of the largest independent trust companies in the nation. Its headquarters is at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532. GreatBanc is

a subsidiary of U.S. Fiduciary Services, Inc., which is also headquartered at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532.

14. Defendant GreatBanc was the Trustee of the Plan at the time of and for the ESOP Transaction. As Trustee, GreatBanc had exclusive discretion to authorize the ESOP Transaction.

15. GreatBanc at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Trustee, within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

16. GreatBanc was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times.

17. GreatBanc's power and authority does not include the power and authority to interpret the terms of the written Plan document.

## FACTUAL ALLEGATIONS

18. Headquartered in Washington, D.C., Chemonics bills itself as "an international development company that combines broad regional experience with technical depth and unparalleled management skill." Chemonics was at all relevant times a privately held entity.

19. Chemonics is headquartered at 1717 H Street, NW, Washington D.C. 20006.

20. Chemonics is and has been an S corporation at all relevant times.

21. Chemonics stock is not readily tradable on an established securities market.

22. Chemonics adopted the Plan with an effective date of January 1, 2001.

23. The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

24. Chemonics identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Chemonics.

25. The Plan's principal asset was at all times Chemonics stock.

26. The Plan is an individual account plan under which a separate individual account was established for each participant.

27. Chemonics is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

28. Employees of Chemonics participate in the Plan.

29. Chemonics is the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

30. Chemonics is and was an ERISA fiduciary to the Plan as its administrator.

31. Chemonics is and was a provider of services to the Plan as its administrator.

32. Chemonics is a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

33. Chemonics appointed GreatBanc as Trustee of the Plan. As Trustee, GreatBanc had sole and exclusive authority to approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Chemonics stock.

34. Note 9 to the Financial Statements to the Plan's Form 5500 Annual Return/Report states that the Plan was amended on March 31, 2011, "to clarify and modify the responsibilities of

the Plan Sponsor, Administrative Committee and the Trustee in the administration of the Plan and the investment of the Plan's assets effective September 1, 2010."

35. Note 9 to the Financial Statements to the Plan's Form 5500 Annual Return/Report states that the Plan was retroactively amended on September 15, 2011 "to clarify the Trustee's responsibilities related to the July 7, 2011, stock purchase and the voting of the Plan's Company stock."

36. As Trustee for the Plan, it was GreatBanc's exclusive duty to ensure that any transactions between the Plan and the Sellers, including acquisitions of Chemonics stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

37. On July 7, 2011, the Plan purchased from the Sellers 792,942 shares of Chemonics common stock for an aggregate price of $216,124,272, of which 18,344 shares were purchased outright and 774,598 shares were financed by the Sellers, with a note that bore 3.86% interest per annum and was to be repaid over a 20-year period.

38. The Plan had also purchased stock from former shareholders in smaller transactions earlier in 2011.

39. With the ESOP Transaction on July 7, 2011, Chemonics became a 100% employee owned company. Plan participants, including Plaintiff, received allocations to their individual accounts at the end of the Plan Year, on December 31, 2011.

40. The Sellers were the shareholders of Chemonics stock, who included directors and officers of the company.

41. Note 7 to the Financial Statements to the Plan's Form 5500 Annual Return/Report reports that the Sellers were "related parties."

42. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Eijk (or Eyk) Van Otterloo, Richard Dreiman, Ashraf W. Rizk, Susanna Mudge, Eric Howell, Barbara C. Teele and/or other directors and officers of Chemonics were the Sellers and at the time of the ESOP Transaction were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as directors, officers, and/or 10 percent or more shareholders, directly or indirectly, of Chemonics.

43. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Chemonics even though the Plan did not obtain control over Chemonics upon its purchase of the company, as Sellers continued to control the Board of Directors. Eijk Van Otterloo, formerly the largest shareholder, continued as Chairman of the Board after the ESOP Transaction; his wife, Rose-Marie Van Otterloo, continued in her position as Director; and other Sellers and their Chemonics employees continued to serve as Directors and officers. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Chemonics stock. As Trustee, GreatBanc is subject to liability for a payment by the Plan of more than fair market value for Chemonics stock caused by the Plan's payment of a control premium where the previous owners retained control of Chemonics, the Plan's failure to receive a discount for lack of control, and/or other factors in GreatBanc's faulty valuation of Chemonics stock in the ESOP Transaction.

44. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. GreatBanc did not perform due diligence similar to the due diligence that is performed

7

by third-party buyers in large corporate transactions in the course of the ESOP Transaction. The Plan overpaid for Chemonics stock in the ESOP Transaction due to GreatBanc's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Chemonics stock in the ESOP Transaction faulty.

45. GreatBanc is liable to the Plan for the difference between the price paid by the Plan and the actual value of Chemonics shares at the time of the ESOP Transaction.

## CLAIMS FOR RELIEF

## COUNT I

### Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b)

46. Plaintiff incorporates the preceding paragraphs as though set forth herein.

47. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here GreatBanc, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Chemonics stock, with a party in interest, here the Sellers, as took place in the ESOP Transaction.

48. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits GreatBanc from causing the Plan to borrow money from a party in interest, here the Sellers, as took place in the ESOP Transaction.

49. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Sellers, of any assets of the ESOP, as took place

in and after the ESOP Transaction with the transfer of Plan assets as payment for Chemonics stock and in continuing payments on the loan.

50. The stock and loan transactions between the Plan and the parties in interest were authorized by GreatBanc in its capacity as Trustee for the Plan.

51. GreatBanc caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

52. ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

53. GreatBanc acted on behalf of the Sellers in connection with the Plan's stock and loan transactions in the ESOP Transaction by causing the Plan to acquire Chemonics stock from the Sellers at an inflated price and a loan from the Sellers that was used to pay the Sellers. This greatly benefited the Sellers to the substantial detriment of the Plan, even though GreatBanc was required to serve the interests of the Plan in connection with any such transaction.

54. GreatBanc received compensation from Chemonics as Trustee for the Plan in the ESOP Transaction in violation of ERISA § 406(b)(3).

55. GreatBanc caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

56. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

9

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

57. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

58. GreatBanc has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Chemonics International, Inc. Employee Stock Ownership Plan from July 7, 2011 to present and the beneficiaries of such participants. Excluded from the Class are the shareholders who sold their Chemonics International, Inc. ("Chemonics") stock to the Plan on July 7, 2011, and their immediate families; the directors of Chemonics; and legal representatives, successors, and assigns of any such excluded persons.

60. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2015 indicates that as of December 31, 2015, there were 2,454 participants and deceased participants whose beneficiaries were receiving or entitled to receive benefits in the Plan.

61. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    i. Whether GreatBanc served as Trustee in the Plan's acquisition of Chemonics stock;

10

ii. Whether GreatBanc was an ERISA fiduciary of the Plan;

iii. Whether GreatBanc caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Chemonics stock and take a loan from parties in interest;

iv. Whether GreatBanc engaged in a good faith valuation of the Chemonics stock in connection with the ESOP Transaction;

v. Whether GreatBanc caused the Plan to pay more than fair market value for Chemonics stock;

vi. Whether GreatBanc engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii. Whether GreatBanc engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii. Whether the sellers of Chemonics stock to the Plan were parties in interest;

ix. The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations; and

x. The appropriate relief for GreatBanc's violations of ERISA.

62. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid an inflated price and took on excessive loans for Chemonics stock, resulting in him being allocated fewer shares of stock, and he continues to suffer such losses in the present because GreatBanc failed to correct the overpayment by the Plan in its time thereafter as Trustee.

63. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

64. Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

65. In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because GreatBanc has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy GreatBanc's violations of ERISA.

66. The names and addresses of the Class members are available from Defendant and the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A. Declare that Defendant GreatBanc caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B. Enjoin Defendant GreatBanc from further violations of ERISA and its responsibilities, obligations, and duties;

C. Order that Defendant GreatBanc make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches of ERISA and restore any profits it has made through use of assets of the Plan;

D. Order that Defendant GreatBanc provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant GreatBanc;

E. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

F. Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant GreatBanc's breaches of ERISA;

G. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

H. Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

I. Order Defendant GreatBanc to pay prejudgment interest;

J. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

K. Award such other and further relief as the Court deems equitable and just.

Dated: July 5, 2017

Respectfully submitted,

**BAILEY & GLASSER LLP**

By: /s/ *Patrick Owen Muench*
Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
3930 N. Lowell Ave.
Chicago, IL 60641
Telephone: (847) 899-1646
Facsimile: (202) 463-2103

Gregory Y. Porter (*pro hac vice* to be filed)
gporter@baileyglasser.com
Ryan T. Jenny
rjenny@baileyglasser.com
Bailey & Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

*Attorneys for Plaintiff*