**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL V. MCMAKEN, on behalf of the       )
Chemonics International, Inc. Employee      )
Stock Ownership Plan, and on behalf of a    )
class of all other persons similarly situated,  )
                                             )
       Plaintiff,                         )
                                             )     No. 17-cv-04983
     v.                                  )
                                             )     Judge Andrea R. Wood
GREATBANC TRUST COMPANY,                    )
                                             )
       Defendant.                        )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Michael McMaken is a participant in an employee stock ownership plan ("Plan")

sponsored by Chemonics International, Inc. ("Chemonics"). Defendant GreatBanc Trust

Company ("GreatBanc") is the trustee for the Plan. McMaken filed the present lawsuit against

GreatBanc on behalf of the Plan and a class of similarly-situated Plan participants, alleging that

GreatBanc caused the Plan to engage in a prohibited transaction under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* During early discovery in this

case, GreatBanc produced an engagement agreement related to the transaction that provided the

basis of this lawsuit. According to McMaken, the engagement agreement contains new facts that

give rise to additional claims. Therefore, McMaken seeks leave to amend his complaint (Dkt. No.

31), which GreatBanc opposes. For the reasons that follow, McMaken's motion for leave to

amend is granted.

**BACKGROUND**

Chemonics is a privately-held company that sponsors the Plan, and GreatBanc is the

Plan's trustee. (Compl. ¶¶ 1, 5, Dkt. No. 1.) When the Plan was initially adopted, it held a

minority interest in Chemonics. (*Id.* ¶ 5.) Then, on July 7, 2011, the Plan purchased from Chemonics shareholders—including its directors and officers—the remaining outstanding Chemonics shares for $216,124,272 ("Transaction"). (*Id.*) Of the 792,942 shares purchased by the Plan, 18,344 shares were purchased outright while the remaining 774,598 shares were financed by Chemonics shareholders with a note to be repaid over twenty years at an interest rate of 3.86% per year. (*Id.*) GreatBanc represented the Plan and its participants in the Transaction and it had sole and exclusive authority to decide whether to consummate the deal. (*Id.* ¶ 6.)

McMaken is a former Chemonics employee and participant in the Plan who is vested in the Chemonics shares in his Plan account. (*Id.* ¶¶ 2, 12.) His initial complaint alleges that GreatBanc committed several violations of ERISA § 406(a), 29 U.S.C. § 1106(a), in connection with the Transaction when it, as fiduciary of the Plan, caused the Plan to engage in prohibited transactions with a party in interest, the Chemonics director and officer shareholders. (Compl. ¶¶ 46–51.) Further, he alleges that GreatBanc violated ERISA § 406(b), 29 U.S.C. § 1106(b), because the Transaction served the interests of an adverse party rather than those of the Plan or its participants and beneficiaries, and because GreatBanc received compensation from Chemonics in connection with the Transaction. (Compl. ¶¶ 52–55.) McMaken also seeks to represent a class of Plan participants and their beneficiaries, excluding those who sold their stock before July 7, 2011 and the directors of Chemonics. (*Id.* ¶¶ 59–66.)

During initial disclosures pursuant to the Northern District of Illinois's Mandatory Initial Discovery Pilot Program, GreatBanc produced to McMaken an engagement agreement between GreatBanc and Chemonics. The engagement agreement contains a provision under which Chemonics agreed to indemnify GreatBanc for any loss, cost, expense, or damage it incurred as trustee in connection with the Transaction. It also provides that Chemonics would compensate

GreatBanc for its services as trustee by paying a fee that included a base administration fee and an additional fee tied to the market value of the Plan's assets at the time the fee was assessed. However, if the market value of the Chemonics shares purchased in the Transaction—measured at the time of the Transaction's closing—was greater, then the annual fee would be calculated based on that number.

Following production of the engagement agreement, McMaken filed the present motion to amend his complaint. He seeks to add three additional counts to his current single-count complaint. First, he seeks to add Count II, which requests a declaration that the indemnification agreement between GreatBanc and Chemonics is void as a matter of public policy because it violates ERISA §§ 404(a) and 410, 29 U.S.C. §§ 1104(a)(1)(A)–(B), 1110, and an injunction to prevent GreatBanc from accepting payment from Chemonics under that agreement. (Corrected Proposed First Amended Complaint ("FAC") ¶¶ 74–80, Dkt. No. 35-2.)[1] In his proposed Count III, McMaken alleges that GreatBanc violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits a fiduciary from dealing with the assets of a plan in its own interest or account, when GreatBanc agreed to the provision in the engagement agreement allowing it to receive asset-based compensation in the form of annual fees. (FAC ¶¶ 82–83.) In particular, McMaken claims that GreatBanc controls the valuation of the assets upon which its annual fee is determined and that GreatBanc artificially inflated the value of the Chemonics stock above fair-market value at the close of the Transaction and annually thereafter so that GreatBanc would receive greater compensation than it was owed. (*Id.* ¶¶ 84–86.) Similarly, proposed Count IV alleges that GreatBanc breached its fiduciary duties, as set out in ERISA § 404(a), 29 U.S.C. § 1104(a), when

---

[1] When McMaken first moved to amend his complaint, he also sought to add five members of the GreatBanc committee that approved the Transaction as Defendants. However, he later agreed to drop those Defendants from his proposed amended complaint. (Dkt. No. 35.)

it entered into the compensation arrangement with Chemonics. (FAC ¶¶ 90–97.) Specifically, McMaken contends that the arrangement was not solely in the interest of the Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to the participants and beneficiaries and defraying reasonable expenses of administering the plan. (*Id.* ¶¶ 90–95.) Finally, McMaken seeks to amend his class allegations to add two new putative classes related to the three additional counts. (*Id.* ¶¶ 99–102.)

GreatBanc opposes McMaken's motion for leave to amend the complaint, arguing that the amendment would be futile because, if granted, the new counts would not survive a motion to dismiss.

## DISCUSSION

Federal Rule of Civil Procedure 15 allows a party to amend its pleading "once as a matter of course within . . . 21 days after serving it" or within 21 days after filing of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is later. Fed. R. Civ. P. 15(a)(1). Where, as here, the party seeks to amend after that time, it may only do so "with the opposing party's written consent or the court's leave." *Id.* at 15(a)(2). Such leave should be freely given "when justice so requires." *Id.* Nonetheless, the Court may deny leave to amend in certain circumstances, including when the amendment would be futile. *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). Leave to amend may be denied on futility grounds "when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). In undertaking the futility analysis, the Court applies the same standard of review as it would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Thus, the amended complaint must contain sufficient factual matter to state a claim to

relief that is plausible on its face. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). And the Court must accept all well-pleaded factual allegations as true and draw inferences in favor of the party seeking leave. *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 611 (N.D. Ill. 2015).

## I.     Indemnification Claims

GreatBanc asserts that the new claims in Count II concerning the indemnification provision in the engagement agreement between GreatBanc and Chemonics are futile because such a provision is not prohibited by ERISA and therefore GreatBanc would not breach its fiduciary duty by exercising its rights under it.

ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [part 4 of Title I of ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). However, the United States Department of Labor has interpreted § 410(a) to

> permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under part 4 of title I. Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a).
>
> Examples of such indemnification provisions are:
>
> (1) Indemnification of a plan fiduciary by (a) an employer, any of whose employees are covered by the plan, or an affiliate . . . of such employer, or (b) an employee organization, any of whose members are covered by the plan . . . .

29 C.F.R. § 2509.75-4. GreatBanc argues that the regulation applies here and allows Chemonics, an employer whose employees are covered by the Plan, to indemnify GreatBanc, the Plan's fiduciary.

While it is true that a fiduciary may by indemnified by a plan sponsor in the same manner as insurance, ERISA prohibits any agreement that relieves the fiduciary of responsibility or liability for violating ERISA—specifically, liability resulting from a breach of fiduciary duty. *See Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir. 1992); *see also Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 714 (N.D. Cal. 1994) ("[I]ndemnification of a plan fiduciary which does not relieve the fiduciary of its ERISA responsibilities is not against public policy."). Here, the relevant indemnification provisions of the engagement agreement appear to provide GreatBanc at least a plausible claim for indemnification for ERISA violations. Section 15 provides:

> Subject to the applicable provisions of ERISA, the Company shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including attorney's fees suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement. . . . However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the "negligence" of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees. For purposes of Sections 14, 15 and 16, the word "negligence" shall mean a material departure from the standards of ordinary care applicable to a person with demonstrated expertise in rendering professional services similar to the services set forth in this Agreement.

(Golumbic Decl., Ex. A, Dkt. No. 37-1.)[2] The plain terms of the engagement agreement provide broad indemnification for any sums borne by GreatBanc in relation to legal proceedings arising out of its services as trustee to the Plan. It then carves out any "loss, cost, expense, or damage"

---

[2] The FAC incorporates by reference the engagement agreement, and thus the full text of the engagement agreement may be considered for purposes of this motion for leave to amend, which is evaluated under the same standard as a Rule 12(b)(6) motion. *Bankcard Am., Inc. v. Univ. Bancard Sys., Inc.*, 904 F. Supp. 753, 757 (N.D. Ill. 1995) ("A complaint is deemed to include documents attached to it as an exhibit or documents incorporated in it by reference.")

6

arising from a final judgment in which GreatBanc is found to have been negligent or engaged in willful misconduct.

As McMaken points out, the carve-out provision, on its face, does not exclude from indemnification ERISA § 406 prohibited transactions that create *per se* liability. That section creates *per se* liability for "transactions in which the potential for misuse of plan assets is particularly great." *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984); *see also Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000) ("ERISA § 406(a)(1) . . . supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed likely to injure the pension plan." (internal quotation marks omitted)). In other words, a fiduciary may be liable for violations of ERISA § 406 even if its actions did not rise to the level of negligence. *See Neil v. Zell*, 753 F. Supp. 2d 724, 731 (N.D. Ill. 2010) (declining to impose a scienter requirement for violations of ERISA § 406). Yet the indemnification provision's carve-out excludes only final judgments resulting from GreatBanc's negligence or willful misconduct; the language on its face does not unambiguously exclude indemnification for final judgments based on violations with no scienter requirement.

GreatBanc responds that no party contends that it could be indemnified for an ERISA § 406 prohibited transaction. According to GreatBanc, only McMaken is "pushing for an illegal reading of the indemnification agreement, just so he can knock it down." (Def.'s Opp'n to Leave to Amend at 8, Dkt. No. 37.) The Court finds, however, that the indemnification provision is susceptible to a reading under which GreatBanc could seek indemnification for a *per se* ERISA violation. GreatBanc believes that the definition of "negligence" in Section 15 and its reference to "standards of ordinary care" is broad enough to include ERISA § 406 violations. However, at

most, the provision is ambiguous as to whether it includes *per se* violations within its scope. And that ambiguity cannot be resolved at this early stage of the case. *See Muscatine Mall Assocs., LLC v. Menard, Inc.*, No. 06 C 2422, 2006 WL 2355577, at *3 (N.D. Ill. Aug. 14, 2006) ("In contract cases, a motion to dismiss is not appropriate if the contract is facially ambiguous.").

In any case, the point of imposing *per se* liability for ERISA § 406 prohibited transactions is that they are violations even when they are not necessarily a material departure from ordinary standards of care. *See McDougall v. Donovan*, 552 F. Supp. 1206, 1214 (N.D. Ill. 1982) ("Rather than leaving all fiduciary transactions to be judged by the general [ERISA § 404(a)] standard, Congress also enacted [ERISA § 406], which prohibits fiduciaries from causing the plan to engage in certain specified transactions.); *see also Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1223 (N.D. Cal. 2008) ("Per se violations of ERISA § 406 are broadly construed to impose liability even when there is 'no taint of scandal, no hint of self-dealing, no trace of bad faith.'" (quoting *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987))). Indeed, ERISA § 406 "supplements an ERISA fiduciary's general duties of loyalty and prudence to the plan's beneficiaries, as set forth in" ERISA § 404. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005). And ERISA § 404(a) explicitly sets out the standard of care. If ERISA § 404(a)'s standard of care reached the conduct prohibited under ERISA § 406, then there would have been no need supplement ERISA § 404 to categorically bar certain transactions. It follows that at least some transactions prohibited under ERISA § 406 would not be a material departure from the ordinary standard of care.

Finally, even if the carve-out applied to ERISA § 406's *per se* violations, Section 18 of the engagement agreement appears to create a carve-out to the carve-out. That section states:

> If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any

> one or more of the Indemnitees from the Company for any reason other than their **_gross negligence_** or willful misconduct, the Company then shall reimburse the affected Indemnitees, as required by Section 15, but taking into account the basis for the denial of full indemnification by the court.

(Golumbic Decl., Ex. A (emphasis added).) While Section 15 excludes indemnification for negligence, Section 18 apparently allows Chemonics still to reimburse at least a portion of GreatBanc's costs if it is denied indemnification due to its negligence (*i.e.* less than gross negligence). Thus, Section 18 appears explicitly to authorize Chemonics at least partially to relieve its fiduciary, GreatBanc, for ERISA § 406 violations and even an ordinary breach of fiduciary duty.

GreatBanc asserts that the court in *Harris v. GreatBanc Trust Co.*, No. EDCV12-1648-R (DTBx), 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013), found valid and enforceable an indemnification agreement that is functionally equivalent to the one here. However, that provision is distinguishable because it explicitly excludes indemnification for a final judgment resulting from "the violation or breach of any fiduciary duty imposed under ERISA." *Id.* at *1. That language unambiguously encompasses ERISA § 406 violations, as the prohibited transactions listed therein are a species of fiduciary duty breaches under ERISA. *See Leigh*, 727 F.2d at 132 (finding that a violation of ERISA § 406 constituted a breach of fiduciary duty); *see also Tullis v. UMB Bank, N.A.*, 640 F. Supp. 2d 974, 980 (N.D. Ohio 2009) ("Under section 406 of ERISA, a fiduciary breach occurs when a fiduciary causes the plan to engage in a [prohibited] transaction . . . ."). Moreover, whereas the indemnification agreement in *Harris* fully excluded violations based upon breach of fiduciary duty, the indemnification provision here allows at least partial reimbursement for an ordinary breach of fiduciary duty. Thus, McMaken has stated a plausible claim that the indemnification provision is void under ERISA § 410 because it potentially

provides indemnification for GreatBanc's *per se* violations under ERISA § 406 and could even allow partial reimbursement for GreatBanc's fiduciary duty breaches.[3]

Alternatively, McMaken argues that the indemnification provision violates ERISA § 410 because the Plan owns 100% of Chemonics shares and therefore Chemonics' payments to GreatBanc are akin to payments from the Plan. While 29 C.F.R. § 2509.75-4 permits indemnification of a plan fiduciary by an employer whose employees are covered by the plan, so long as the plan remains fully responsible and liable for its ERISA violations, it does not permit "any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan." *Id.* At this stage, the Court's conclusion that the indemnification provision potentially relieves GreatBanc of its fiduciary duties and obligations is sufficient to maintain the ERISA § 410 claim.

Nonetheless, the issue of whether Chemonics's payments to GreatBanc are essentially payments from the Plan converges with GreatBanc's arguments against McMaken's ERISA § 404 claim for breach of fiduciary duty arising from the indemnification provision. GreatBanc asserts that McMaken cannot maintain such a claim because he cannot show that the Plan will sustain harm as a result of payments made from Chemonics to GreatBanc. To state a claim for breach of fiduciary duty under ERISA § 404, a plaintiff must show, among other things, "that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Here, McMaken's claim only relates to GreatBanc's exercise of the indemnification provision in this action, and any losses that may arise should it be found liable on Counts I, III, or

---

[3] GreatBanc also argues that McMaken's ERISA § 410 claim fails because McMaken seeks to nullify provisions indemnifying a fiduciary who is merely accused of, but not found liable for, breach. However, McMaken denies that his claim seeks to prevent GreatBanc from receiving indemnification for costs incurred in successfully defending itself against an accusation of breach. The Court believes that the ERISA § 410 claim in the first amended complaint is consistent with McMaken's representation. (*See* FAC ¶ 77 ("To the extent that the indemnification agreement attempts to relieve GreatBanc of its responsibility or liability to discharge its duties under ERISA, or attempts to have Chemonics (a Plan-owned company) and thereby the Plan be responsible for GreatBanc's liability for breaches of the statute . . . such provision is void as against public policy.").)

IV. According to GreatBanc, its exercise of that provision breaches no fiduciary duty because its payments will come from Chemonics, and although the Plan owns 100% of Chemonics shares, Chemonics's assets are not the Plan's assets.

To support its argument that payments from Chemonics do not constitute payments from the Plan, GreatBanc cites 29 C.F.R. § 2510.3-101(a)(2). That Regulation states:

> Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that—
>
> (i) The entity is an operating company . . . .

*Id.* Since Chemonics is a privately-held S-Corporation (FAC ¶¶ 19, 21), the Plan's 100% ownership will not make Chemonics's underlying corporate assets the Plan's assets if Chemonics is an operating company. The Regulation defines an operating company as "an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital." *Id.* § 2510.3-101(c)(1). GreatBanc contends that the FAC concedes the issue when it alleges that "Chemonics bills itself as 'an international development company that combines broad regional experience with technical depth and unparalleled management skill.'" (FAC ¶ 19.) Based on that description, it is almost certainly the case that Chemonics fits 29 C.F.R. 2510.3-101(c)(1)'s definition of an operating company, although the Court is wary of definitively concluding so at this stage, as it may be impermissibly drawing a factual inference in GreatBanc's favor. However, even if the Court were to conclude here that Chemonics is an operating company, that determination would not doom McMaken's claim.

Assuming for present purposes that the funds Chemonics uses to indemnify GreatBanc are not assets of the Plan, Chemonics's payments still would cause harm to the Plan. For an employee stock ownership program such as the Plan, a "judgment against the employer will negatively affect the [P]lan itself" by indirectly imposing the cost of a breach of fiduciary duty on the Plan. *Fernandez v. K-M Indus. Holding Co.*, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009). Thus, if Chemonics is "forced to indemnify [GreatBanc] against a sizeable judgment for breach of fiduciary duty, it would almost certainly decrease the value of [Chemonics] and, by extension, the [Plan's] shares." *Id.* Several courts have agreed that where an employee stock ownership program owns a significant portion of the plan sponsor's stock, indemnification of a plan fiduciary by the plan sponsor indirectly imposes the burden of the trustee's breach of fiduciary duty on the employee stock ownership program itself. *E.g.*, *Pfeifer v. Wawa, Inc.*, 214 F. Supp. 3d 366, 373 (E.D. Pa. 2016) ("[I]ndemnification by an [employee stock ownership program] sponsor functionally equates to an impermissible indemnification by the [employee stock ownership program] itself."); *Fernandez*, 646 F. Supp. 2d 1150; *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 640–41 (W.D. Pa. 1999); *Donovan v. Cunningham*, 541 F. Supp. 276, 289 (S.D. Tex. 1982) (finding that an employee stock ownership program would bear the expense of a fiduciary breach if the plan's fiduciary could receive indemnification from the plan sponsor where the plan owns a substantial portion of the sponsor's stock), *rev'd in part on other grounds*, 716 F.2d 1455. As GreatBanc notes, the court in *Harris v. GreatBanc Trust Co.* disagreed and found that indemnification from an operating company plan sponsor whose shares are owned in substantial part by the employee stock ownership program did not cause harm to the plan. 2013 WL 1136558, at *3. Nonetheless, that is a minority position. *See Pfeifer*, 214 F. Supp. 3d at 373 (listing cases). The Court agrees with the majority that the indirect imposition of costs on the Plan

is a cognizable harm for a claim for breach of fiduciary duty. Consequently, McMaken's ERISA § 404 claim based on the indemnification provision in the engagement agreement is not futile.

## II.     Compensation Claims

### A.     Prohibited-Transaction Claim

In his proposed FAC, McMaken seeks to add a Count III stating an ERISA § 406 prohibited-transaction claim arising from GreatBanc's receipt of asset-based compensation as provided in the engagement agreement. McMaken alleges that the compensation arrangement—whereby GreatBanc receives an annual fee based on the market value of the Plan's assets—violates ERISA § 406(b)(1), which prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

GreatBanc contends that the prohibited-transaction claim fails because the engagement agreement is between Chemonics and GreatBanc. According to GreatBanc, an ERISA § 406(b)(1) claim requires the Plan to be party to the transaction. However, that argument is based on too narrow an interpretation of the phrase "deal with assets of the plan." As an initial matter, the dictionary definition of "deal" when used in conjunction with "with" is broad. Specifically, it means to "take action with regard to someone or something." Merriam-Webster's Collegiate Dictionary, 11th Ed. (2003). Further, it is telling that ERISA §§ 406(b)(2) and (b)(3), are each specifically addressed to acts "in any transaction involving the plan" and "in connection with a transaction involving the assets of the plan," respectively. 29 U.S.C. §§ 1106(b)(2)–(3). It is clear that Congress knew how to narrow the scope of certain prohibited transactions to transactions involving the plan itself, but declined to do so for ERISA § 406(b)(1). And it is telling that the legislature spoke more generally in ERISA § 406(b)(1) of simply "deal[ing] with the assets of the plan," and then in the same subsection spoke specifically of transactions involving the plan or its

assets. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) ("We have often noted that when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presumes that Congress intended a difference in meaning." (internal quotation marks and alteration omitted)).

Moreover, a broad interpretation of the "deal with" language in ERISA § 406(b)(1) comports with Congress's intent. Indeed, in interpreting ERISA § 406(b)(1), the Seventh Circuit has stated that it did "not believe that Congress intended the language . . . to be interpreted narrowly." *Leigh*, 727 F.2d at 126. It explained that the "entire statutory scheme of ERISA demonstrates Congress'[s] overriding concern with the protection of plan beneficiaries, and we would be reluctant to construe narrowly any protective provisions of the Act." *Id.* While GreatBanc asserts that the subsection heading of ERISA § 406(b) makes clear that it is addressed to "Transactions between plan and fiduciary," 29 U.S.C. 1106(b), section headings "cannot substitute for the operative text of the statute." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326, 2336 (2008). And while section headings can be useful in resolving ambiguity, GreatBanc cannot rely solely on the heading to support its argument that ERISA § 406(b) unambiguously restricts each of its subsections to transactions in which a plan is a party. *United States v. Quality Stores, Inc.*, 572 U.S. 141, 150–51 (2014); *see also Bhd. of R.R. Trainmen v. Balt. & O.R. Co.*, 331 U.S. 519, (1947) ("[Headings and titles] are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain."). Another court in this District used similar logic to find that a violation of ERISA § 406(b)(1) did not require even an affirmative transaction. *See United Food & Commercial Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon*, No. 13 CV 4484, 2014 WL 4627904, at *6 (N.D. Ill. Sept. 16, 2014) ("True, the statutory heading [of ERISA § 406(b)(1) uses the word 'transactions,'

but as a general rule, the title of a statute cannot limit the plain meaning of the text. A statute's heading is of use only when it sheds light on some ambiguous word or phrase." (internal quotation marks and alteration omitted)).

This Court's conclusion that an ERISA § 406(b)(1) prohibited transaction is not limited to transactions involving a plan is bolstered by Seventh Circuit precedent. In *Stuart Park Associates Limited Partnership v. Ameritech Pension Trust*, 51 F.3d 1319 (7th Cir. 1995), an officer of a pension fund and a broker for a partnership seeking an investment from the fund entered into an agreement whereby the broker would pay the officer a kickback in exchange for the officer's recommendation that the fund invest in the partnership's real estate project. Although the prohibited transaction was between the fiduciary and a third-party, the Seventh Circuit nonetheless found that it was "readily apparent" the officer of the pension fund violated ERISA § 406(b)(1) by "exchanging favorable recommendations for personal monetary gain." *Id.* at 1325. Several other courts have also found a violation of ERISA § 406(b)(1) in instances where the plan was not a party to the at-issue transaction. *E.g.*, *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001) (finding an ERISA § 406(b)(1) violation where a health and medical benefit plan fiduciary paid for insurance to cover certain claims under the plan and then charged premiums to the plan's sponsor that exceeded what the fiduciary paid); *O'Neill v. Davis*, 721 F. Supp. 1013, 1014–16 (N.D. Ill. 1989) (holding that plaintiff could state a claim under ERISA § 406(b)(1) based on allegations that trustee of employee stock ownership program voted plan-owned shares of company stock to reconstitute company's board of directors). Thus, the Court concludes that ERISA § 406(b)(1) does not require the Plan to be a party to the transaction forming the basis of the claim.

GreatBanc further argues that it did not deal with the Plan's assets because the payments came from Chemonics, and in any case asset-based compensation is permissible. The flaw in that argument is that it focuses narrowly on the payments from Chemonics to GreatBanc and the structure of that compensation. However, the Court understands the alleged self-dealing to be related to GreatBanc's actions in valuing Chemonics stock—the shares of which are indisputably Plan assets. (*See, e.g.*, FAC ¶¶ 85 ("GreatBanc engaged in prohibited transactions . . . by receiving annual fees for its services as Trustee to the Plan over the past six years ***based upon its valuations of Plan assets***, Chemonics stock, above the stock's fair market value" (emphasis added).) And by assigning a value to the Plan's assets, GreatBanc has certainly "taken action with regard to the assets," and thus its actions easily fit within the scope of "deal[ing] with" plan assets.[4]

The FAC does note that the engagement agreement contains a provision requiring that the valuations be prepared by an independent financial advisor. According to GreatBanc, that allegation, and the fact that McMaken did not allege that GreatBanc controlled or influenced the advisor, defeats the ERISA § 406(b)(1) claim because it shows that GreatBanc did not have control over its valuations. But GreatBanc reads too much into this allegation. What the referenced provision requires is that GreatBanc retain an independent financial advisor. (Golumbic Decl., Ex. A § 5.) And while the FAC alleges that the financial advisor provides a valuation, nowhere does it state that its valuation is determinative. Instead, the FAC clearly

---

[4] GreatBanc briefly claims that McMaken failed to allege sufficiently that the fees were excessive, and therefore his claim fails because there is no self-dealing if the fees charged were reasonable in light of the services provided. That appears to reference exemptions to ERISA § 406 set out by ERISA §§ 408(b)(2), (c)(2). Of course, as McMaken notes, the ERISA § 408 exemptions are affirmative defenses on which GreatBanc bears the burden of proof. *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016). Furthermore, a majority of courts have found that the "reasonable compensation" exemptions under ERISA §§ 408(b)(2), (c)(2) apply only to prohibited transactions under ERISA § 406(a), and not ERISA § 406(b). *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 750 (6th Cir. 2014) (citing cases). While the Court takes no position on the applicability of these exemptions for purposes of the present motion, it is clear that they cannot defeat McMaken's claim at this stage.

alleges that GreatBanc has the final say on valuation. (*See* FAC ¶¶ 52–53, 84–86.) Given the link between GreatBanc's compensation and the valuation of Chemonics stock, which GreatBanc controls, McMaken has sufficiently alleged that that GreatBanc has dealt with the Plan's assets in its own interest or for its own account. At this stage, McMaken's allegations of the ties between GreatBanc's valuation of the Plan's assets and its own compensation is sufficient to state a prohibited transaction claim under ERISA § 406(b)(1).

### B.     Breach of Fiduciary Duty Claim

Count IV of McMaken's proposed FAC sets forth a claim for breach of fiduciary duty, also based on GreatBanc's asset-based compensation arrangement. Specifically, he contends that GreatBanc valued Chemonics stock above its fair market value to reap greater fees pursuant to its compensation arrangement with the company. However, GreatBanc claims that a breach of fiduciary duty claim is futile because McMaken fails to plead facts suggesting that GreatBanc's compensation was excessive and that it failed to employ a prudent process to determine the fair market value of Chemonics stock. GreatBanc further asserts that McMaken failed to identify any loss to the Plan.

A plaintiff may state a breach of fiduciary duty claim under ERISA by alleging: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) the breach caused harm to plaintiff. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). There is no dispute that GreatBanc, as the Plan's trustee, is a fiduciary. What GreatBanc disputes is whether McMaken sufficiently allege that it breached its fiduciary duty in the manner it valued Chemonics stock. At this stage, GreatBanc is demanding that McMaken allege more detailed facts than is necessary to survive a Rule 12(b)(6) motion to dismiss. As McMaken correctly notes, "ERISA does not have heightened pleading requirements." *Diebold ex rel.*

17

*ExxonMobil Savings Plan v. N. Trust Invs., N.A.*, No. 09 CV 1934, 2012 WL 4017929, at *3

(N.D. Ill. Sept. 10, 2012). Instead, the complaint need only plead sufficient factual content to

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Allen v. GreatBanc Trust Co.*, 835

F.3d 670, 674 (7th Cir. 2016) ("[I]t is enough to provide the context necessary to show a plausible

claim for relief.").

      Here, McMaken has pleaded enough facts to support a breach of fiduciary duty. He alleges

that GreatBanc entered into a compensation arrangement under which it is paid annual fees that

increase commensurate with the value of Chemonics stock. Moreover, GreatBanc is alleged to

possess the ultimate authority to determine Chemonics stock value. And McMaken further alleges

that GreatBanc used that authority to artificially inflate the value of the stock during the

Transaction and continue to do so at least annually in order to receive excessive compensation.

Under the standard of care set out by ERISA § 404(a)(1)(A), a plan fiduciary must act "for the

exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . .

defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The facts in

the FAC, taken as true, show a plausible breach of that standard of care. GreatBanc is demanding

more than is necessary at this early stage of litigation when it faults McMaken for not pleading

facts that demonstrate that the fees it charged were in fact excessive and that it failed to employ a

prudent process to determine the fair market value of Chemonics stock. *See Allen*, 835 F.3d at 678

("[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which

[he] has no access, as long as the facts alleged tell a plausible story.").

      Yet even if McMaken adequately alleged a breach of fiduciary duty here, GreatBanc

contends that his FAC fails to allege that the breach harmed McMaken. In particular, GreatBanc

claims that there was no loss to the Plan because any compensation paid to GreatBanc came from Chemonics' corporate assets rather than the Plan's assets. However, the harm alleged comes from Chemonics paying GreatBanc larger annual fees than it was due. As discussed above, even if those payments came from Chemonics's corporate assets, they still harmed the Plan because payments by Chemonics of sums it is not required to pay negatively impacts the value of Chemonics shares—all of which are owned by the Plan.

Relatedly, GreatBanc argues that the first amended complaint does not articulate any cognizable theory of injury-in-fact for purposes of Article III standing because the facts alleged demonstrate that GreatBanc's purported actions actually increased the value of the Plan's assets. For support, GreatBanc cites only cases where the plaintiffs had already sold their stock at a net profit and therefore concretely benefitted from the inflation. *See Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010); *In re Wilmington Trust Corp. ERISA Litig.*, 943 F. Supp. 2d 478, 488 (D. Del. 2013). By contrast, McMaken remains vested in the shares of Chemonics stock allocated to his Plan account. (FAC ¶ 2.) Thus, he has obtained no benefit from GreatBanc's purported misvaluation of the stock. And the Court declines to find that an ERISA beneficiary must sell his or her shares in order to be able to have standing to raise an ERISA breach of fiduciary duty claim. *See Swain v. Wilmington Trust, N.A.*, No. 17-71-RGA-MPT, 2018 WL 934598, at *3 (D. Del. Feb. 16, 2018) (declining to impose a sell-to-sue requirement for maintaining an ERISA claim based on the alleged artificial inflation of stock value).

Further, the Court cannot find that GreatBanc's purported misvaluations, the basis of the alleged ERISA violation in Count IV, deprive McMaken of standing because the artificially inflated value of the shares in his Plan account is greater than when they initially vested. It is

sufficient that McMaken has alleged a plausible harm to the true value of the stock in McMaken's Plan account due to the extra fees paid by Chemonics to GreatBanc as a result of GreatBanc's misvaluation. That is a cognizable injury-in-fact for constitutional standing purposes. *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) ("If the plaintiffs' allegations are true, they suffered injury[-in-fact] in that their retirement accounts were worth less than they would have been absent the breach of duty, and this injury was caused, as the plaintiffs have alleged, by the fiduciaries' misconduct."). Consequently, his Count IV breach of fiduciary duty claim is not futile.

## CONCLUSION

For the foregoing reasons, McMaken's motion for leave to amend complaint (Dkt. No. 31) is granted.

ENTERED:

Dated: April 3, 2019

_____
Andrea R. Wood
United States District Judge