**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL V. MCMAKEN, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiff,** | **Case No. 1:17-cv-04983-ARW-MDW** |
| **v.** | |
| **GREATBANC TRUST COMPANY,** | |
| **Defendant.** | |

## FIRST AMENDED COMPLAINT

Plaintiff Michael V. McMaken, by his undersigned attorneys, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan and similarly situated participants in the Plan, and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Michael V. McMaken ("Plaintiff") brings this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the Chemonics International, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Chemonics International, Inc. ("Chemonics") on July 7, 2011, and continuing to the present.

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who vested in shares of Chemonics allocated to his account in the Plan.

1

3.     This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan, and other relief, caused by GreatBanc when it authorized the Plan to buy shares of Chemonics for more than fair market value (Count I), sought its legal fees and expenses and potential liability in this lawsuit from Plan-owned Chemonics under an ERISA-prohibited indemnification agreement (Count II), and when GreatBanc used its control over the valuations upon which its asset-based compensation is determined to inflate its annual fees from Chemonics over a six year period (Counts III and IV).

4.     As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from GreatBanc's violations of ERISA's prohibited transaction rules and other provisions.

5.     Chemonics is and was at all relevant times a privately-held company and the Plan's sponsor. The Plan was adopted effective January 1, 2001, and held a minority interest in Chemonics until July 7, 2011. On July 7, 2011, the Plan purchased from party in interest sellers— shareholders who included Chemonics directors and officers (the "Sellers")—the remaining 792,942 outstanding shares of Chemonics common stock for an aggregate price of $216,124,272, of which 18,344 shares were purchased outright and 774,598 shares were financed by the Sellers with a note that bore 3.86% interest per annum and was to be repaid over a 20 year period (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, Chemonics became 100% employee owned.

6.     GreatBanc represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority over whether to go through with the ESOP Transaction.

7.     The ESOP Committee (a/k/a Fiduciary Committee) of GreatBanc ("ESOP Committee") was the entity within GreatBanc that approved the ESOP Transaction, by a unanimous vote.

8.     The ESOP Transaction allowed the Sellers to unload their interests in Chemonics above fair market value, and saddle Plan participants with millions of dollars of debt to finance the Transaction. GreatBanc failed to fulfill its duties as Trustee to the Plan and Plan participants, including Plaintiff.

9.     Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by him and similarly situated participants, resulting from GreatBanc's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA and other violations of the statute.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require GreatBanc to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant GreatBanc is headquartered in this District and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

13.     Plaintiff Michael V. McMaken has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff McMaken resides in Fredericksburg, Virginia. Plaintiff McMaken was the Director of Safety and Security at Chemonics. He vested in the shares of Chemonics in his Plan account.

14.     Defendant GreatBanc is one of the largest independent trust companies in the nation. Its headquarters is at 801 Warrenville Road, Suite 500, Lisle Illinois 60532. GreatBanc is a subsidiary of U.S. Fiduciary Services, Inc., which is also headquartered at 801 Warrenville Road, Suite 500, Lisle Illinois 60532.

15.     Defendant GreatBanc was the Trustee of the Plan at the time of and for the ESOP Transaction. As Trustee, GreatBanc had exclusive discretion to authorize the ESOP Transaction. GreatBanc has been the ongoing Trustee of the Plan from the ESOP Transaction to the present.

16.     GreatBanc at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Trustee, within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

17.     GreatBanc was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times.

18.     GreatBanc's power and authority does not include the power and authority to interpret the terms of the written Plan document.

4

## FACTUAL ALLEGATIONS

19.     Headquartered in Washington, D.C., Chemonics bills itself as "an international development company that combines broad regional experience with technical depth and unparalleled management skill." Chemonics was at all relevant times a privately held entity.

20.     Chemonics is headquartered at 1717 H Street, NW, Washington D.C. 20006.

21.     Chemonics is and has been an S corporation at all relevant times.

22.     Chemonics stock is not readily tradable on an established securities market.

23.     Chemonics adopted the Plan with an effective date of January 1, 2001.

24.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

25.     Chemonics identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Chemonics.

26.     The Plan's principal asset was at all times Chemonics stock.

27.     The Plan is an individual account plan under which a separate individual account was established for each participant.

28.     Chemonics is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

29.     Employees of Chemonics participate in the Plan.

30.     Chemonics is the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

31.     Chemonics is and was an ERISA fiduciary to the Plan as its administrator.

32.     Chemonics is and was a provider of services to the Plan as its administrator.

5

33.     Chemonics is a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

34.     Chemonics appointed GreatBanc as Trustee of the Plan. As Trustee, GreatBanc had sole and exclusive authority to approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Chemonics stock.

35.     Note 9 to the Financial Statements to the Plan's Form 5500 Annual Return/Report states that the Plan was amended on March 31, 2011, "to clarify and modify the responsibilities of the Plan Sponsor, Administrative Committee and the Trustee in the administration of the Plan and the investment of the Plan's assets effective September 1, 2010."

36.     Note 9 to the Financial Statements to the Plan's Form 5500 Annual Return/Report states that the Plan was retroactively amended on September 15, 2011 "to clarify the Trustee's responsibilities related to the July 7, 2011, stock purchase and the voting of the Plan's Company stock."

37.     As Trustee for the Plan, it was GreatBanc's exclusive duty to ensure that any transactions between the Plan and the Sellers, including acquisitions of Chemonics stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

38.     On July 7, 2011, the Plan purchased from the Sellers 792,942 shares of Chemonics common stock for an aggregate price of $216,124,272, of which 18,344 shares were purchased outright and 774,598 shares were financed by the Sellers, with a note that bore 3.86% interest per annum and was to be repaid over a 20-year period.

39.      The ESOP Committee voted unanimously to approve the ESOP Transaction.

40.     The Plan had also purchased stock from former shareholders in smaller transactions earlier in 2011.

41.     With the ESOP Transaction on July 7, 2011, Chemonics became a 100% employee owned company. Plan participants, including Plaintiff, received allocations to their individual accounts at the end of the Plan Year, on December 31, 2011.

42.     The Sellers were the shareholders of Chemonics stock, who included directors and officers of the company.

43.     Note 7 to the Financial Statements to the Plan's Form 5500 Annual Return/Report reports that the Sellers were "related parties."

44.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Eijk (or Eyk) Van Otterloo, Richard Dreiman, Ashraf W. Rizk, Susanna Mudge, Eric Howell, Barbara C. Teele and/or other directors and officers of Chemonics were the Sellers and at the time of the ESOP Transaction were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as directors, officers, and/or 10 percent or more shareholders, directly or indirectly, of Chemonics.

45.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Chemonics even though the Plan did not obtain control over Chemonics upon its purchase of the company, as Sellers continued to control the Board of Directors. Eijk Van Otterloo, formerly the largest shareholder, continued as Chairman of the Board after the ESOP Transaction; his wife, Rose-Marie Van Otterloo, continued in her position as Director; and other Sellers and their Chemonics employees continued to serve as

Directors and officers. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Chemonics stock. As Trustee, GreatBanc is subject to liability for a payment by the Plan of more than fair market value for Chemonics stock caused by the Plan's payment of a control premium where the previous owners retained control of Chemonics, the Plan's failure to receive a discount for lack of control, and/or other factors in GreatBanc's faulty valuation of Chemonics stock in the ESOP Transaction.

46.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. GreatBanc did not perform due diligence similar to the due diligence that is performed by third-party buyers in large corporate transactions in the course of the ESOP Transaction. The Plan overpaid for Chemonics stock in the ESOP Transaction due to GreatBanc's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the Trustee's valuation of Chemonics stock in the ESOP Transaction faulty.

47.    GreatBanc is liable to the Plan for the difference between the price paid by the Plan and the actual value of Chemonics shares at the time of the ESOP Transaction.

48.    GreatBanc has received consideration for its own personal account from Chemonics for GreatBanc's services in the ESOP Transaction in the form of fees, under a Successor Trustee Engagement Agreement made and entered into between GreatBanc and Chemonics on May 25, 2011.

49. Under the Successor Trustee Engagement Agreement (at Paragraph 8, page Bates stamped GREATBANC_0000372 by GreatBanc), GreatBanc received a "Transaction Responsibility Fee" of many tens of thousands of dollars.

50. Under the Successor Trustee Engagement Agreement (at Paragraph 9 and the GreatBanc Trust Company Schedule of Fees for Employee Stock Ownership Plans, pages Bates stamped GREATBANC_0000372 and -377), GreatBanc has received for its ongoing service as Trustee of the Plan's trust and as custodian of the assets of the Plan an annual fee from Chemonics. The annual fee is paid in quarterly installments in advance. The annual fee includes a base administration fee of $20,000. The annual fee also includes an additional fee based on the "market value" of the assets of the Plan's Trust at the time the annual fee is assessed, unless the market value of the shares of Chemonics purchased by GreatBanc as of the Closing date of the ESOP Transaction was greater, in which case the greater market value of the shares of Chemonics purchased by GreatBanc as of the Closing date of the ESOP Transaction is used to calculate the annual fee.

51. GreatBanc has been the ongoing Trustee under the Plan throughout the period from the 2011 ESOP Transaction to the present.

52. GreatBanc's ongoing services as Plan Trustee included the duty to determine the fair market value of Chemonics stock and obtain from an appraiser engaged by GreatBanc a valuation of Chemonics stock no less frequently than annually, pursuant to the written Plan document, as amended, and the Chemonics International, Inc. Employee Stock Ownership Trust Agreement. Such private valuation is necessary because Chemonics stock is not publicly traded on an established exchange and thus is not valued by an established securities market.

53.     Asset-based compensation to GreatBanc gave and gives GreatBanc a financial reward to overstate the value of Chemonics stock in the ESOP Transaction valuation and in subsequent valuations.

54.     While the Successor Trustee Engagement Agreement creates a floor on the amount of GreatBanc's annual fee based upon the market value of the shares of Chemonics purchased by GreatBanc as of the Closing date of the ESOP Transaction, it creates no cap on the amount of GreatBanc's annual fee. Uncapped asset-based compensation to GreatBanc results in a windfall to GreatBanc, as the value of Chemonics stock rises, for providing no additional services to the Plan.

55.     Under the Successor Trustee Engagement Agreement (at Paragraph 10, page Bates stamped GREATBANC_0000372), GreatBanc could also be due additional fees from Chemonics for "additional services" or "extraordinary services."

56.     Payment by Chemonics, which the Plan owns, of excessive fees to GreatBanc negatively affects Chemonics' equity value and therefore the value of Plan assets. Payment of excessive fees to GreatBanc by Chemonics adversely affects the Plan and Plaintiff's and other participants' financial interests.

57.     Under the Successor Trustee Engagement Agreement (at Paragraph 15, pages Bates stamped GREATBANC_0000373 to -374), Chemonics agreed to give GreatBanc as Plan Trustee, and GreatBanc's officers, directors, employees and agents, indemnification for any loss, cost, expense, or other damage, including attorney's fees, in connection with their services in the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation. The indemnification agreement is null and void under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy.

58.     Payment by Chemonics, which the Plan owns, of millions of dollars of attorneys' fees, costs and litigation expenses to GreatBanc's counsel necessarily would adversely impact Chemonics' equity value and therefore the value of Plan assets. Direct payment or reimbursement of GreatBanc's defense costs by Chemonics would adversely affect the Plan and Plaintiff's and other participants' financial interests.

59.     Payment by Chemonics directly to the Plan or in reimbursement to GreatBanc for any judgment this Court makes against GreatBanc would result in no benefit to the Plan and its participants and would, in violation of ERISA § 410, relieve GreatBanc from responsibility or liability for its responsibility, obligation, or duty under ERISA.

60.     In July 2017, after Plaintiff filed his Complaint, GreatBanc requested indemnification from Chemonics with regard to this lawsuit under the terms of the Successor Trustee Engagement Agreement. In response, Chemonics agreed in July 2017 to indemnify GreatBanc, subject to a reservation of rights, in this litigation.

## CLAIMS FOR RELIEF

### COUNT I
**Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)–(b),
29 U.S.C. § 1106(a)–(b), in Connection with the ESOP Transaction**

61.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

62.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here GreatBanc, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Chemonics stock, with a party in interest, here the Sellers, as took place in the ESOP Transaction.

11

63. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits GreatBanc from causing the Plan to borrow money from a party in interest, here the Sellers, as took place in the ESOP Transaction.

64. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Sellers, of any assets of the ESOP, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Chemonics stock and in continuing payments on the loan.

65. The stock and loan transactions between the Plan and the parties in interest were authorized by GreatBanc in its capacity as Trustee for the Plan.

66. GreatBanc caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

67. ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

68. GreatBanc acted on behalf of the Sellers in connection with the Plan's stock and loan transactions in the ESOP Transaction by causing the Plan to acquire Chemonics stock from the Sellers above fair market value and a loan from the Sellers that was used to pay the Sellers. This greatly benefited the Sellers to the substantial detriment of the Plan, even though GreatBanc was required to serve the interests of the Plan in connection with any such transaction.

69. GreatBanc received from Chemonics consideration—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

70. GreatBanc caused and engaged in prohibited transactions in violation of ERISA §§ 406(b)(2) and 406(b)(3) in the ESOP Transaction.

71. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

72. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

73. GreatBanc has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

### COUNT II
### Violation of ERISA §§ 410 and 404(a)(1)(A), (B), 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), In Connection with the Indemnification Agreement

74. Plaintiff incorporates the preceding paragraphs as though set forth herein.

75. ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA Sections 404 and 406 are under Part IV, any provision that attempts to relieve GreatBanc, a Plan

fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable here.

76.     The indemnification agreement purports to provide payment or reimbursement for the benefit of GreatBanc for its defense costs and/or liability by Chemonics, which the Plan owns.

77.     To the extent that the indemnification agreement attempts to relieve GreatBanc of its responsibility or liability to discharge its duties under ERISA, or attempts to have Chemonics (a Plan-owned company) and thereby the Plan be responsible for GreatBanc's liability for breaches of the statute, including but not limited to defense costs, such provision is void as against public policy.

78.     The indemnification agreement effectively contains no limitation on indemnity by Chemonics with regard to the Count I and Count III prohibited transaction claims, at any time in the course of litigation or after final judgment, to or for the benefit of GreatBanc of its losses, costs, expenses, or other damages, including attorneys' fees. An exception contained in the indemnification agreement does not address violation of the *per se* rules under ERISA § 406. Questions of negligence and/or willful misconduct are not part of the ERISA prohibited transaction claims pled in Count I and the indemnification agreement's exception where a court has made a final finding of such is inapposite to Plaintiff's Count I and Count III claims.

79.     To the extent that GreatBanc, a fiduciary of the Plan, seeks to exercise such a provision that is void against public policy under ERISA § 410, it breaches its fiduciary duties under ERISA by failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries; for the exclusive purpose of providing benefits to plan participants and to defray reasonable expenses of plan administration; and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

80.     As a result of the foregoing, the indemnification agreement should be declared void *ab initio*, and GreatBanc should be enjoined from seeking and accepting payment from Chemonics under the indemnification agreement.

## COUNT III
### Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), in Connection With GreatBanc's Control of its Compensation

81.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

82.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary, here GreatBanc, with respect to a plan, here the Plan, from dealing with the assets of the plan in his or its own interest or for his or its own account.

83.     Under the Successor Trustee Engagement Agreement and its Schedule of Fees for Employee Stock Ownership Plans, GreatBanc received for its ongoing Trustee services to the Plan uncapped asset-based compensation in the form of annual fees, paid it to in advance in quarterly installments.

84.     GreatBanc controlled the amount of its own compensation because it controlled the valuations upon which its asset-based compensation was determined.

85.     GreatBanc engaged in prohibited transactions in violation of ERISA § 406(b)(1) by receiving annual fees for its services as Trustee to the Plan over the past six years based upon its valuations of Plan assets, Chemonics stock, above the stock's fair market value.

86.     After the valuation conducted for the ESOP Transaction in 2011, GreatBanc did not correct the market value of the shares of Chemonics purchased by GreatBanc as of the Closing

date of the ESOP Transaction, and it continued to mis-value Chemonics stock in valuations conducted at least annually. GreatBanc therefore continued to receive compensation that was excessive under the Successor Trustee Engagement Agreement and its Schedule of Fees for Employee Stock Ownership Plans.

87.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

88.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

89.     GreatBanc has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

**COUNT IV**
**Breaches of Fiduciary Duty under ERISA § 404(a), 29 U.S.C. § 1104(a),**
**in Connection with GreatBanc's Control of Its Compensation**

90.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

91.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires plan fiduciaries to act "solely in the interest" of plan participants and beneficiaries. Subsection (A) of this section requires that the fiduciary act for the "exclusive purpose" of providing benefits to plan participants and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A); *see also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

92. Under the Successor Trustee Engagement Agreement and its Schedule of Fees for Employee Stock Ownership Plans, GreatBanc received for its ongoing Trustee services to the Plan uncapped asset-based compensation in the form of annual fees, paid it to in advance in quarterly installments.

93. GreatBanc controlled the amount of its own compensation because it controlled the valuations upon which its asset-based compensation was determined. GreatBanc functioned as a Plan fiduciary when it determined its own compensation for ongoing Trustee services to the Plan.

94. GreatBanc breached its fiduciary duties in violation of ERISA § 404(a) to act "solely in the interest" of plan participants and beneficiaries, for the "exclusive purpose" of providing benefits to plan participants, and to defray reasonable expenses of plan administration by mis-valuing above fair market value the Chemonics stock held by the Plan and thus causing itself to receive excessive annual fees for its services as Trustee to the Plan over the past six years.

95. After the valuation conducted for the ESOP Transaction in 2011, GreatBanc did not correct the market value of the shares of Chemonics purchased by GreatBanc as of the Closing date of the ESOP Transaction, and it continued to mis-value Chemonics stock in valuations conducted at least annually. GreatBanc therefore continued to receive compensation that was excessive under the Successor Trustee Engagement Agreement and its Schedule of Fees for Employee Stock Ownership Plans.

96. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

17

97.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

98.     GreatBanc has caused losses to the Plan by the breaches of fiduciary duty in an amount to be proved specifically at trial.

## CLASS ACTION ALLEGATIONS

99.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following classes.

100.    For Count I Plaintiff seeks a class (the "Transaction Class") of:

> All participants in the Chemonics International, Inc. Employee Stock Ownership Plan, and the beneficiaries of such participants, who were allocated Chemonics International, Inc. stock in the Plan from July 7, 2011 to present. Excluded from the Class are the shareholders who sold their Chemonics stock to the Plan on July 7, 2011, and their immediate families; the directors of Chemonics; and legal representatives, successors, and assigns of any such excluded persons.

101.    For Count II Plaintiff seeks a class (the "Indemnification Class") of:

> All vested participants in the Chemonics International, Inc. Employee Stock Ownership Plan, and the beneficiaries of such participants, from the filing of the Complaint on July 5, 2017 to present. Excluded from the Class are the shareholders who sold their Chemonics stock to the Plan on July 7, 2011, and their immediate families; the directors of Chemonics; and legal representatives, successors, and assigns of any such excluded persons.

102.    For Count III and Count IV Plaintiff seeks a class (the "Fee Class") of:

> All vested participants in the Chemonics International, Inc. Employee Stock Ownership Plan, and the beneficiaries of such participants, from April 2, 2013 to present. Excluded from the Class are the shareholders who sold their Chemonics stock to the Plan on July 7, 2011, and their immediate families; the directors of Chemonics; and legal representatives, successors, and assigns of any such excluded persons.

103.     The Transaction Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Transaction Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2011 reported that there were 579 active participants (i.e., entitled to stock allocation) on December 31, 2011. The Plan's Form 5500 filing for 2015 reported 1,353 active Plan participants (i.e., entitled to stock allocation) on December 31, 2015. The Plan's Forms 5500 also show hundreds more participants who had received stock allocations retired, died or otherwise separated in the proposed class period. The Transaction Class therefore far exceeds 40 members and joinder is impracticable.

104.     The Indemnification Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Indemnification Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing, for 2015, reported that there were 2,449 active participants and retired or separated participants receiving or entitled to future benefits as of December 31, 2015. In addition, there were five deceased participants whose beneficiaries were receiving or were entitled to receive benefits. The Indemnification Class therefore far exceeds 40 members and joinder is impracticable.

105.     The Fee Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Fee Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2012 reported that there were 2,279 active participants and retired or separated participants receiving or entitled to future benefits as of December 31, 2012. In addition, there were two deceased participants whose beneficiaries were receiving or were entitled to receive benefits. The Plan's most recent Form 5500 filing, for 2015, reported that there were 2,449 active participants and retired or separated participants receiving or entitled to future benefits as of December 31, 2015. In addition, there were five deceased participants whose

beneficiaries were receiving or were entitled to receive benefits. The Fee Class therefore far exceeds 40 members and joinder is impracticable.

106. Questions of law and fact common to the Transaction Class as a whole include, but are not limited to, the following:

i. Whether GreatBanc served as Trustee in the Plan's acquisition of Chemonics stock;

ii. Whether GreatBanc was an ERISA fiduciary of the Plan;

iii. Whether GreatBanc caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Chemonics stock and take a loan from parties in interest;

iv. Whether GreatBanc engaged in a good faith valuation of the Chemonics stock in connection with the ESOP Transaction;

v. Whether GreatBanc caused the Plan to pay more than fair market value for Chemonics stock;

vi. Whether GreatBanc engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii. Whether GreatBanc engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii. Whether the sellers of Chemonics stock to the Plan were parties in interest;

ix. The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations; and

x. The appropriate relief for GreatBanc's violations of ERISA.

107. Questions of law and fact common to the Indemnification Class as a whole include, but are not limited to, the following:

    i. Whether GreatBanc has sought payment under the indemnification agreement as a result of this lawsuit;

    ii. Whether the indemnification agreement purports to cover the defense costs and liability of GreatBanc in this lawsuit;

    iii. Whether the indemnification agreement is prohibited by ERISA;

    iv. Whether Chemonics has made payments under the indemnification agreement for the benefit of GreatBanc in this lawsuit;

    v. Whether GreatBanc is an ERISA fiduciary of the Plan;

    vi. The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations; and

    vii. The appropriate relief for GreatBanc's violations of ERISA.

108. Questions of law and fact common to the Fee Class as a whole include, but are not limited to, the following:

    i. Whether GreatBanc served as ongoing Trustee for the Plan from the ESOP Transaction to present;

    ii. Whether GreatBanc received asset-based compensation in the form of annual fees for its ongoing Trustee services;

    iii. Whether Chemonics paid GreatBanc for its ongoing Trustee services under the terms of a contract;

    iv. Whether GreatBanc engaged in prohibited transactions under ERISA by dealing with the assets of the plan in its own interest or for its own account;

v. Whether GreatBanc controlled the amount of its own compensation because it controlled the valuations upon which its asset-based compensation was determined;

vi. Whether GreatBanc was an ERISA fiduciary of the Plan;

vii. Whether GreatBanc caused the Plan to pay more than fair market value for Chemonics stock as a result of its 2011 valuation;

viii. Whether GreatBanc mis-valued Chemonics stock in annual valuations after the ESOP Transaction;

ix. Whether GreatBanc was overpaid under the terms of the governing contract;

x. Whether GreatBanc had any overpayments corrected;

xi. The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations; and

xii. The appropriate relief for GreatBanc's violations of ERISA.

109. Plaintiff's claims are typical of those of the Classes. For example, Plaintiff, like other Plan participants in the Transaction Class, suffered a diminution in the value of his Plan account because the Plan overpaid and took on excessive loans for Chemonics stock, resulting in him being allocated fewer shares of stock, and he continues to suffer such losses in the present because GreatBanc failed to correct the overpayment by the Plan in its time thereafter as Trustee. Plaintiff, like other Plan participants in the Fee Class, suffered a diminution in the value of his Plan account because Plan-owned Chemonics overpaid fees to GreatBanc in the proposed class period. Like other Plan participants in the Indemnification Class, the undistributed value of Plaintiff's Plan account, which Plaintiff seeks in this lawsuit, is reduced by payments from Chemonics to

GreatBanc pursuant to the indemnification of GreatBanc's defense costs and liability by Chemonics.

110.     Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

111.     Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

112.     In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because GreatBanc has acted or refused to act on grounds generally applicable to the Classes, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole. The members of the Classes are entitled to declaratory and injunctive relief to remedy GreatBanc's violations of ERISA.

113.     The names and addresses of the members of the Classes are available from Defendant GreatBanc and the Plan. Notice will be provided to all members of the Classes to the extent required by Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

A.    Declare that Defendant GreatBanc caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Defendant GreatBanc breached its fiduciary duties under ERISA;

C.    Enjoin Defendant GreatBanc from further violations of ERISA and its responsibilities, obligations, and duties;

D.    Order that Defendant GreatBanc make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches of ERISA and restore any profits it has made through use of assets of the Plan;

E.    Order that Defendant GreatBanc provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant GreatBanc;

F.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.    Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant GreatBanc's breaches of ERISA;

H.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I.   Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

J.   Order that the indemnification agreement is declared void *ab initio*, and that Defendant GreatBanc is enjoined from seeking or accepting payment from Chemonics, or the Plan that owns Chemonics, under such agreement, and Defendant and its agents must reimburse Chemonics and the Plan for payments received;

K.   Order Defendant GreatBanc to pay prejudgment interest;

L.   Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

M.   Award such other and further relief as the Court deems equitable and just.

Dated:  April 3, 2019                          Respectfully submitted,

                                               **BAILEY & GLASSER LLP**

                                               By:  /s/ *Patrick Owen Muench*
                                               Patrick O. Muench (IL #6290298)
                                                pmuench@baileyglasser.com
                                               3930 N. Lowell Ave.
                                               Chicago, IL 60641
                                               Telephone: (847) 899-1646
                                               Facsimile: (202) 463-2103

                                               Gregory Y. Porter (*pro hac vice*)
                                                gporter@baileyglasser.com
                                               Ryan T. Jenny
                                                rjenny@baileyglasser.com
                                               Bailey & Glasser LLP
                                               1055 Thomas Jefferson St., NW, Suite 540
                                               Washington, DC 20007
                                               Telephone: (202) 463-2101
                                               Facsimile: (202) 463-2103

                                               *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of April 2019, a copy of the foregoing was served

using the Court's CM/ECF system upon Defendant's counsel:

Lars C. Golumbic
Andrew Salek-Raham
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 861-6615
Facsimile: (202) 659-4503
E-Mail: lgolumbic@groom.com
E-Mail: asalek-raham@groom.com

Bradford D. Roth
Daniel Broderick Jr
Brendan R. Youngblood
**CASSIDAY SCHADE LLP**
20 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 444-1612
Facsimile: (312) 444-1669
E-Mail: broth@cassiday.com
E-Mail: dbroder@cassiday.com
E-Mail: byoungblood@cassiday.com
*Counsel for Defendant*

/s/ Patrick O. Muench
Patrick O. Muench (IL #6290298)
BAILEY & GLASSER LLP
3930 N. Lowell Ave.
Chicago, IL 60641
Telephone: (847) 899-1646
Facsimile: (202) 463-2103
pmuench@baileyglasser.com

*Attorneys for Plaintiff*