**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

**MICHAEL V. MCMAKEN, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**

**Plaintiff,**

**v.**

**GREATBANC TRUST COMPANY,**

**Defendant.**

---

**Case No. 1:17-cv-04983-ARW-MDW**

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
<u>**ON THE FIFTH AFFIRMATIVE DEFENSE**</u>

Dated: May 10, 2019

Patrick O. Muench (IL #6290298)
Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW,
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
pmuench@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiff*

## I.      INTRODUCTION

Plaintiff Michael V. McMaken moves for summary judgment on the Fifth Affirmative

Defense (Waiver and Release) asserted in Defendant GreatBanc Trust Company's Answer to

Plaintiff's First Amended Complaint and Affirmative Defenses (the "Answer") (*See* Dkt. 97).

Plaintiff seeks a summary judgment that his lawsuit is not barred by the Confidential Separation

Agreement and General Release (the "Release") (*See* Dkt. Nos. 97-1, 51-2) because GreatBanc is

*not*, as GreatBanc claims, a fiduciary of Chemonics International, Inc. ("Chemonics") and is

therefore not a Releasee under the Release.

There are no genuine disputes of material fact on the Fifth Affirmative Defense.

GreatBanc acknowledges that the Release it has filed three times with the Court contains the

terms upon which it bases its Fifth Affirmative Defense. GreatBanc admits, and the contracts it

has submitted to the Court show, that Chemonics engaged it to be the Trustee for the Chemonics

International, Inc. Employee Stock Ownership Plan (the "Plan"), and not for Chemonics itself.

GreatBanc has filed the amended Plan document with the Court and does not dispute that

Amendments 5 and 6—under which GreatBanc is a "named fiduciary" of the Plan—are, and

were at the time the Release was executed, operative Plan provisions. The undisputed material

facts show that GreatBanc was the Trustee for, and a fiduciary of, the Plan, and *not* of

Chemonics. Therefore, Plaintiff is entitled to judgment as a matter of law on the affirmative

defense of Waiver and Release.

Plaintiff moves for partial summary judgment to narrow the issues presented at trial and

to resolve an affirmative defense that may be raised as an obstacle to class certification. It is well

established that under the Federal Rules of Civil Procedure partial summary judgment is an

appropriate procedure for the Court to narrow the scope of trial. *See Neil v. Zell*, 753 F. Supp. 2d

724 (N.D. Ill. 2010) (granting plaintiffs' motion for partial summary judgment in ESOP case); *Brundle v. Wilmington Trust, N.A.*, No. 1:15-cv-1494, 2016 WL 6542718, at \*16 (E.D. Va. Nov. 3, 2016) (granting plaintiff's motion for partial summary judgment in ESOP case on waiver and release defense); Fed. R. Civ. P. 56(a). For these reasons and those set forth below, the Court should grant Plaintiff's motion for partial summary judgment.

## II. RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on July 5, 2017. *See* Dkt. 1. GreatBanc filed its Answer to Plaintiff's Complaint and Affirmative Defenses on September 6, 2017. *See* Dkt. 17. Plaintiff moved for leave to amend his Complaint on January 16, 2018 (*See* Dkt. 31) and the Court granted that motion on March 31, 2019 (*See* Dkt. 90, 91). While Plaintiff's Motion to Amend was pending, Plaintiff filed a Motion for Partial Summary Judgment addressing the same issues raised in this motion. *See* Dkt. 71. Plaintiff's original Motion for Partial Summary Judgment was never resolved before Plaintiff filed his First Amended Complaint. Plaintiff filed his First Amended Complaint on April 3, 2019. *See* Dkt. 93. GreatBanc filed its Answer to Plaintiff's First Amended Complaint on April 29, 2019. *See* Dkt. 97. GreatBanc attached the Confidential Separation Agreement and General Release ("Release") as Exhibit A to its Answer. *See* Dkt. 97-1. The Answer asserts a Fifth Affirmative Defense of Waiver and Release, claiming that the Release between Plaintiff and Chemonics bars Plaintiff's lawsuit against GreatBanc. *See* Answer at p.43.

Pursuant to the Standing Order Regarding Mandatory Initial Discovery Pilot Project, the parties provided their responses to the mandatory initial discovery requests on October 6, 2017. *See* Dkt. 22, 23. The parties have both issued and responded to production and interrogatory requests and have engaged in discovery for more than a year. Plaintiff supplemented his initial

disclosures on September 18, 2018. *See* Dkt. 62. GreatBanc supplemented its initial disclosures

on October 19, 2018. *See* Dkt. 67.

On July 3, 2018, Plaintiff moved for leave to join or interplead Chemonics because

Chemonics had sought to litigate an issue in Plaintiff's bankruptcy proceeding in the Eastern

District of Virginia that was already an issue in this action. *See* Dkt. 45. Specifically, Chemonics

filed a proof of claim in Plaintiff's bankruptcy proceeding arguing that Plaintiff released claims

via the Release; that Plaintiff breached the Release by suing GreatBanc in this action; and that

Chemonics incurred costs by having to pay for the defense costs. *See* Dkt. 46-1, 46-2. Plaintiff

objected to that claim in bankruptcy court and also moved to join Chemonics here to allow this

Court to address the issues raised by the Release. *See* Dkt. 52-2, 52-4, 55. On August 7, 2018,

GreatBanc filed its Opposition to Plaintiff's Motion to Amend the Complaint by Joining or

Interpleading Chemonics International, Inc. *See* Dkt. 51. At that time, GreatBanc filed

documents relevant to the present motion as exhibits to the Declaration of Lars C. Golumbic ¶ 5

("Golumbic Decl."). *See* Dkt. 51-1 to 51-6.

On September 13, 2018, the bankruptcy court granted Plaintiff's objection to Chemonics'

claim, holding that on the evidence GreatBanc is not a fiduciary to Chemonics and Plaintiff did

not release claims against GreatBanc. *See In re: Michael V. McMaken*, No. 17-13334, 2018 WL

4471017, at *2-3 (Bankr. E.D. Va. Sept. 13, 2018). Chemonics agreed not to appeal the

bankruptcy court's ruling if Plaintiff withdrew his motion to join or interplead. *See* Dkt. 55 at 2.

On September 26, 2018, Plaintiff requested that his motion be withdrawn. *See* Dkt. 55. On

October 5, 2018, the Court granted Plaintiff's motion to withdraw his motion to join or

interplead. *See* Dkt. 63.

### III.    STANDARD OF REVIEW

A plaintiff may move for summary judgment on a single "claim or defense," or even a "part of each claim or defense." Fed. R. Civ. P. 56(a). A court must grant the motion if the plaintiff "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To oppose this motion, a defendant may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts based upon materials in the record showing there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further explaining, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"); Fed. R. Civ. P. 56(c). A defendant's showing must be "significantly probative" in order to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The Seventh Circuit recognizes the usefulness of a partial summary judgment to narrow the issues for trial, explaining:

> The Federal Rules of Civil Procedure explicitly allow for "[p]artial [s]ummary [j]udgment" and require parties to "identif[y] each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." FED. R. CIV. P. 56(a) (emphasis added). At the summary-judgment stage, the court can properly narrow the individual *factual* issues for trial by identifying the material disputes of fact that continue to exist.

*BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original); *see also Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, 791 F. Supp. 2d 626, 632 (E.D. Wis. 2011) (noting that "the newly revised rules permit a party to move for partial

summary judgment, a term the advisory committee itself understood to mean an issue-narrowing

adjudication").

## IV.    ARGUMENT

To prevail on its Fifth Affirmative Defense of Waiver and Release, GreatBanc must

prove it is a Releasee under the terms of the Release. The persons released by Plaintiff under the

Release are: "Chemonics and its parents, subsidiaries, predecessors, successors, directors,

officers, fiduciaries, insurers, employees and agents (collectively, the 'Releasees')." SOMF ¶ 8.[1]

GreatBanc claims that it is a Releasee under the Release on the basis that it is allegedly a

fiduciary to Chemonics. SOMF ¶ 9.[2] The facts showing that GreatBanc is the Trustee and

fiduciary of *the Plan* and not of Chemonics have been admitted and proved in GreatBanc's

Answer, interrogatory responses, and authenticated exhibits. Because there is no genuine issue of

material fact requiring trial on the Fifth Affirmative Defense, the Court should grant Plaintiff

summary judgment.

Chemonics appointed GreatBanc to be the Trustee *for the Plan*.  SOMF ¶ 5. GreatBanc

was *the Plan's* Trustee at the time of the ESOP transaction in July 2011 and a month later in

August 2011 when Chemonics and Plaintiff executed the Release. SOMF ¶ 2. That is, the

undisputed facts show that under the governing contracts, the Successor Trustee Engagement

Agreement ("Engagement Agreement") (Ex. E to Golumbic Decl. (Dkt. No. 51-6)) and the

Chemonics International, Inc. Employee Stock Ownership Trust Agreement ("Trust

Agreement") (Ex. C to Golumbic Decl. (Dkt. 51-4)), GreatBanc was not appointed as Trustee to

---

[1] "SOMF" refers to Plaintiff's concurrently filed Statement of Material Facts as to Which There is No Genuine Issue that Entitle Plaintiff to Judgment as a Matter of Law on the Fifth Affirmative Defense.
[2] Likewise before the U.S. Bankruptcy Court for the Eastern District of Virginia, the only basis on which Chemonics claimed GreatBanc was a Releasee was as its alleged fiduciary. *See In re: Michael V. McMaken*, No. 17-13334, 2018 WL 4471017, at *2 (Bankr. E.D. Va. Sept. 13, 2018).

Chemonics but to the Plan. This is dispositive because the fiduciary duties that flowed from these contractual engagements were not for the benefit of Chemonics, which was the settlor and not the beneficiary of the Plan's Trust. For this reason, the Bankruptcy Court for the Eastern District of Virginia rejected Chemonics' argument that GreatBanc was its fiduciary. *See In re: Michael V. McMaken*, 2018 WL 4471017, at *2 ("Chemonics was in the position of the settlor of the Trust, not the beneficiary. GreatBanc's fiduciary duties run to the beneficiaries of the Trust, not to Chemonics . . . GreatBanc inarguably was appointed as the Trustee for the Trust, not for Chemonics."). This Court should hold likewise and grant Plaintiff's present motion.

Furthermore, the Plan's terms expressly provide that GreatBanc is a fiduciary *to the Plan*. By Amendment No. 5, effective September 1, 2010, GreatBanc, as Trustee, was made the Plan's named fiduciary for investing the Trust assets. Section 16(e) of the Plan, as amended, provides:

> Duties of the Trustee - The Trustee shall be the named fiduciary with authority to invest the Trust Assets, except to the extent such authority is allocated to the Board of Directors under Section 5. The Trustee shall be responsible for selecting an independent appraiser and determining the Fair Market Value of Company Stock as of such dates it determines to be necessary or appropriate. The Trustee shall establish an investment policy to provide a method for acquiring Company Stock and for otherwise investing the Trust Assets in a manner that is consistent with the objectives of the Plan and the requirements of ERISA.

SOMF ¶ 11. GreatBanc is thus a "named fiduciary" of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. §§ 1102(a). *See also* SOMF ¶ 10.[3]

Section 5(f) of the Plan, as amended by Amendment No. 6, describes GreatBanc's authority as named fiduciary for the Plan in the July 7, 2011 Transaction. The Plan provides:

> July 7, 2011 Stock Purchase – Notwithstanding the provisions of Section 5(a) and (b), the Trustee shall negotiate the July 7, 2011 Acquisition Loan, and purchase of Company Stock, at a price not exceeding Fair Market Value (determined by the Trustee based upon a valuation by an independent appraiser,

---

[3] In addition to being a named fiduciary under ERISA § 402(a), with its authority under the Plan GreatBanc was also a "functional fiduciary" under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

> selected by the Trustee) on the purchase date based on the Trustee's determination (in the exercise of its reasonable judgment) that such transaction is in the best interests of the Plan and the Participants and is in compliance with all applicable requirements of the Code and ERISA. The Trustee shall have the power and authority to take any actions necessary or appropriate (including, but not limited to, the execution of documents on the Plan's behalf) to carry out its responsibilities hereunder.

SOMF ¶ 12.

To state the obvious, the Plan provides that GreatBanc, as Trustee, was a Plan fiduciary, not that it was a fiduciary of Chemonics. An appointed fiduciary is the fiduciary to the plan and its participants, *not* to the appointing settlor. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009) (holding appointer and appointee could both be plan fiduciaries but had contractual and not fiduciary relationship with each other); 29 U.S.C. § 1104(a)(1) (imposing fiduciary exclusive purpose duty); 29 U.S.C. § 1103(c)(1) (imposing trustee exclusive purpose duty). Furthermore, as the U.S. Department of Labor has explained, a trustee of a plan "will, by definition, always be a 'fiduciary' under ERISA as result of its authority or control over plan assets." U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, 2004 WL 2979777 (EBSA) (Dec. 17, 2004); *cf. Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989) ("ERISA also imposes broad fiduciary responsibilities on plan trustees and extensively regulates their conduct.").

GreatBanc was contractually required to act exclusively for the benefit of Plan participants and beneficiaries in the execution of its duties under the Plan and Trust. Section 16(f) of the Plan, as amended, provides that "the Trustee shall perform [its] duties under the Plan and the Trust Agreement solely in the interests of the Participants (and their Beneficiaries)." SOMF ¶ 13. Section 5(f) of the Plan document, quoted above, describes GreatBanc's fiduciary function in the ESOP Transaction, including that it was charged to act in the best interests of the Plan and its participants (that is, not in the interests of Chemonics and its previous owners), and

that it was required to comply with ERISA's requirements, which include exclusive purpose provisions. SOMF ¶ 12; 29 U.S.C. §§ 1103(c)(1), 1104(a)(1). Similarly, the Engagement Agreement restates what is required by ERISA: that GreatBanc's discretionary decisions are governed by the fiduciary responsibility provisions in part 4 of Title 1 of ERISA, which include an exclusive duty of loyalty to a plan's participants and beneficiaries. SOMF ¶ 14; ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

For all these reasons, as a matter of contract as well as under the statute, GreatBanc was a fiduciary to the Plan and its participants and beneficiaries. GreatBanc was not a fiduciary to Chemonics, and under ERISA it could not be. Under ERISA § 404(a)(1), GreatBanc, as a fiduciary, was required to "discharge [its] duties with respect to [the] plan *solely in the interests of the participants and beneficiaries* and—(A) for the *exclusive purpose* of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1) (emphasis added). This exclusivity provision precludes any argument that GreatBanc was also a fiduciary to Chemonics.

"ERISA *presumes* that the interests of the employer and the employer-sponsored plans are *adverse*." *Rothstein v. American Int'l Grp., Inc.*, 837 F.3d 195, 208 (2d Cir. 2016) (citing *Pegram v. Herdich*, 530 U.S. 211, 255 (2000)). The Second Circuit explains: "To the extent sponsorship of an ERISA plan says anything about an employer's control over that plan, it is that any such control is specifically circumscribed to ensure the plan is managed 'solely in the interest of the [plan's] participants and beneficiaries.'" *Id.* (quoting 29 U.S.C. § 1104(a)(1)). Thus, an employer "may act in its own interests as an employer" when selling the company to an ESOP. *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1052 (W.D. Wis. 2012). But Congress structured ERISA in such a way as to "insulate the trust from the employer's interest."

8

*NLRB v. Amax Coal Co.*, 453 U.S. 322, 333 (1981). ERISA imposes undivided loyalty on GreatBanc. Simply put, GreatBanc could not serve the competing interests of Chemonics and the Plan. It cannot be a fiduciary to both as a matter of law. Should GreatBanc claim that GreatBanc had a dual fiduciary relationship with both the Plan and the "presumably adverse" plan sponsor that appointed it to be an independent trustee, the contention conflicts with fundamental ERISA precepts.

## V.    CONCLUSION

The Court should conclusively resolve that GreatBanc was not a fiduciary to Chemonics, and therefore is not a Releasee under the Release, in order to simplify and streamline the trial. Plaintiff also believes that resolution of this affirmative defense will assist the parties in evaluating a possible settlement of the litigation, at an opportune time prior to expenditures of time and money in depositions and expert discovery. For the reasons set forth herein, the Court should grant Plaintiff summary judgment on GreatBanc's Fifth Affirmative Defense.

Dated: May 10, 2019                        Respectfully submitted,

/s/ Patrick O. Muench
Patrick O. Muench (IL #6290298)
Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
pmuench@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May 2019, a copy of the foregoing was served using the Court's CM/ECF system upon Defendant's counsel:

Lars C. Golumbic
Andrew Salek-Raham
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 861-6615
Facsimile: (202) 659-4503
E-Mail: lgolumbic@groom.com
E-Mail: asalek-raham@groom.com

Bradford D. Roth
Daniel Broderick Jr.
Brendan R. Youngblood
**CASSIDAY SCHADE LLP**
222 West Adams Street
Chicago, IL 60606
Telephone: (312) 641-3100
Facsimile: (312) 444-1669
E-Mail: broth@cassiday.com
E-Mail: dbroder@cassiday.com
E-Mail: byoungblood@cassiday.com
*Counsel for Defendant*

/s/ Patrick O. Muench
Patrick O. Muench (IL #6290298)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
pmuench@baileyglasser.com

*Attorneys for Plaintiff*