**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL V. MCMAKEN**, on behalf of the Chemonics International, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**GREATBANC TRUST COMPANY,**<br><br>　　　　　　Defendant. | Case No. 1:17-cv-04983-ARW-MDW |

**DEFENDANT GREATBANC TRUST COMPANY'S OPPOSITION TO
PLAINTIFF'S MAY 10, 2019 MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated:　June 6, 2019　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Lars C. Golumbic*
　　　　　　　　　　　　　　　　　　　　　　Lars C. Golumbic (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Kara P. Wheatley (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Andrew D. Salek-Raham (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　**GROOM LAW GROUP, CHARTERED**
　　　　　　　　　　　　　　　　　　　　　　1701 Pennsylvania Avenue NW
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 861-6615
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 659-4503
　　　　　　　　　　　　　　　　　　　　　　E-Mail: lcg@groom.com

　　　　　　　　　　　　　　　　　　　　　　Bradford D. Roth
　　　　　　　　　　　　　　　　　　　　　　Daniel Broderick Jr
　　　　　　　　　　　　　　　　　　　　　　**CASSIDAY SCHADE LLP**
　　　　　　　　　　　　　　　　　　　　　　222 W. Adams St., Suite 2900
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 444-1612
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 444-1669
　　　　　　　　　　　　　　　　　　　　　　E-Mail: broth@cassiday.com
　　　　　　　　　　　　　　　　　　　　　　E-Mail: dbroder@cassiday.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant GreatBanc Trust Company*

## I.   INTRODUCTION

GreatBanc Trust Company ("GreatBanc") was the trustee of the Chemonics International, Inc. ("Chemonics") Employee Stock Ownership Plan ("ESOP") on July 7, 2011, when the ESOP acquired a 100% interest in Chemonics ("Transaction"). Plaintiff Michael McMaken was an ESOP participant and a Chemonics employee at the time of the Transaction and for roughly a month afterwards before Chemonics began the process of terminating his employment in August 2011. When he left, McMaken agreed to a Confidential Separation Agreement and General Release ("Release") that paid him $16,000 in exchange for a "**GENERAL RELEASE**" of claims – including those against "Chemonics and its . . . fiduciaries" arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") – that McMaken agreed would be "construed in the broadest possible manner." Release, Dkt. 51-2, at 1 (emphasis original). Nevertheless, McMaken sued, alleging that the value of the stock he acquired before his termination was lower than it should have been because GreatBanc caused the ESOP to overpay in the Transaction.

McMaken's present Motion for Partial Summary Judgment (Dkt. 101) ("Motion") asks the Court to hold that the Release's plain language permits this suit against GreatBanc. The Motion – filed five months before the end of fact discovery – is premature. The Court should not evaluate the validity and scope of the Release in a piecemeal fashion, before the parties have completed discovery regarding the Release. Indeed, Plaintiff should not be permitted to end-run discovery regarding the Release and obtain an early summary judgment before GreatBanc has had the opportunity to discover the facts necessary to determine whether it will file its own motion concerning the Release. The Court therefore should deny the instant Motion without prejudice, grant GreatBanc's accompanying motion for additional discovery under Rule 56(d), and evaluate the parties' motions regarding the Release at the same time after the completion of

1

necessary fact discovery. *See* Motion for Discovery under Rule 56(d) and accompanying Declaration of Lars C. Golumbic, Dkt. 106 ("Rule 56(d) Motion"), at 1-2 (proposing discovery and briefing schedule).

If the Court decides to consider Plaintiff's Motion now, the Motion should be denied because it is substantively wrong. Plaintiff's syllogism appears to be this: GreatBanc can only be considered one of "Chemonics['] . . . fiduciaries" under the Release if it owes fiduciary obligations *to* Chemonics. But since Chemonics engaged GreatBanc to represent the ESOP in a fiduciary capacity and not Chemonics, GreatBanc cannot be deemed a releasee. *See* Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, Dkt. 102, at 5-6 ("Pl.'s Mem.").

Plaintiff bases his syllogism – and the entirety of his memorandum of law – on a straw man. GreatBanc *does not contend* that it owes fiduciary obligations to Chemonics, *does not contend* that any state or federal statute obligates it to act in a fiduciary capacity to Chemonics, and *does not contend* that it would be a releasee even if it did somehow owe fiduciary duties to Chemonics.

It is GreatBanc's position instead that the "**GENERAL RELEASE**" of ERISA claims that McMaken gave to "Chemonics and its . . . fiduciaries" and that he agreed should be "construed in the broadest possible manner" fairly encompasses GreatBanc as a releasee under basic tenets of contract interpretation, including that agreements must be read as a whole and in a way to give effect to all of the contract's provisions. Release, Dkt. 51-2, at 1 (emphasis original). Against this backdrop, GreatBanc is fairly considered one of Chemonics' fiduciaries in the sense that Chemonics, as plan sponsor, had full authority to design the ESOP's governance structure and assign fiduciary duties to itself, to GreatBanc, and to others as it saw fit. Moreover,

2

Chemonics acted as the appointing fiduciary actually responsible for engaging GreatBanc as trustee, thereby conferring on GreatBanc the fiduciary authority Chemonics contemplated when it designed the plan document and trust agreement. Should the Court decide that further discovery is not warranted, then, the plain language of the Release requires that the Court deny Plaintiff's Motion.[1]

## II. ARGUMENT

### A. The Court should address the Release issue just once at the close of discovery.

By filing the Motion now – several months before the close of fact discovery, *see* May 2, 2019 Scheduling Order, Dkt. 99 – Plaintiff hopes to shortcut discovery concerning the Release that other courts have relied on to dismiss other ESOP overvaluation lawsuits in their entirety. *See Innis v. Bankers Tr. Co. of S.D.*, No. 4:16-cv-650, Dkt. 139 (S.D. Iowa Apr. 30, 2019) (order granting defendant's motion for summary judgment) (relying on facts developed in discovery, including interrogatories and deposition testimony, to hold that a former ESOP participant had agreed to release similar overvaluation claims against the ESOP's trustee).

While the parties have conducted some document and written discovery regarding the Release, that discovery is incomplete. For example, Plaintiff informed GreatBanc on June 3, 2019, that he does not possess documents responsive to two of GreatBanc's document requests that bear directly on McMaken's understanding of the scope of the Release at or around the time

---

[1] Chemonics filed a claim in McMaken's bankruptcy proceeding arguing that McMaken violated the terms of his Release by bringing this suit against GreatBanc, for which Chemonics as indemnitor may be financially liable. In concluding that GreatBanc was not a "fiduciary" of Chemonics, the bankruptcy court considered only the generic meaning of "fiduciary" under state (specifically, District of Columbia) common law. *See In re Michael V. McMaken*, No. 17-13334, 2018 WL 4471017, at *2 (Bankr. E.D. Va. Sept. 13, 2018) (slip opinion). GreatBanc was neither a party to that action nor did the bankruptcy court address the more context-specific arguments under federal and ERISA law GreatBanc raises here.

3

that he signed it, including any documents that he received from Chemonics. *See* Rule 56(d) Motion, Dkt. 106-2, Golumbic Decl., Attachment A, Email chain between K. Wheatley and P. Muench (May 23, 2019 email summarizing meet and confer regarding GreatBanc's document requests and Plaintiff's June 3, 2019 response).[2] Now that GreatBanc is aware that Plaintiff no longer possesses responsive material, GreatBanc will need to seek these documents from non-parties, including Chemonics, his former employer, who may still be in possession of McMaken's employee file, email files, loose electronic files, and paper files. The parties also have not yet conducted a single deposition on any issue, which, as Plaintiff's counsel acknowledged during a recent meet and confer, GreatBanc would need to do to uncover any oral communications that McMaken may have had regarding the Release. *Id.* (May 23, 2019 email summarizing meet and confer regarding GreatBanc's document requests).[3]

Indeed, after completing this discovery, GreatBanc intends to evaluate whether to move for summary judgment on the grounds that McMaken released his claims against GreatBanc. To do so, GreatBanc would first need to establish that the Release is valid and enforceable. For a release to be valid under ERISA,

> [a] court must examine the totality of the circumstances surrounding the signature, including such matters as:
>
> > (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee

---

[2] The requests seek "[a]ll communications between Plaintiff and Chemonics relating to Plaintiff's separation or termination of employment" and "[a]ll communications between Plaintiff and any person (including, but not limited to financial consultants or other advisors) relating to Plaintiff's separation or termination of employment (if applicable) and/or any Release." *See* Rule 56(d) Motion, Dkt. 106-3, Golumbic Decl., Attachment B, Plaintiff's Responses and Objections to Defendant's Requests for Production, Requests 17 and 19.

[3] See Rule 56(d) Motion, Dkt. 106-1, Golumbic Decl. ¶15, and *infra* p. 7, for more a complete description of necessary discovery topics.

4

> actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Howell v. Motorola*, *Inc.,* 633 F.3d 552, 559 (7th Cir. 2011) (citation omitted); *see also Innis,* Dkt. 139 (order granting defendant's motion for summary judgment) (analyzing these factors to hold that plaintiff's release of ESOP overvaluation claims was valid and enforceable).

The parties have not yet completed discovery on these issues. Hearing Plaintiff's Motion now and GreatBanc's later would result in piecemeal litigation that would be a waste of the Court's and the parties' time and resources. The Court accordingly should deny Plaintiff's Motion without prejudice or stay briefing until such time as GreatBanc is prepared to cross-move after the completion of necessary fact discovery. *See* Fed. R. Civ. P. 1 (stating that courts must act to "secure the just, speedy, and inexpensive determination of every action and proceeding").

GreatBanc not only requires additional discovery for its own motion for summary judgment on the Release, but also to fully oppose Plaintiff's present motion. Under Federal Rule of Civil Procedure 56(d), a court must "defer considering" a motion for summary judgment, "deny it," or "allow time to obtain affidavits or declarations or to take discovery" where the nonmovant "cannot present facts essential to justify its opposition." *See Bryant v. City of Chi.*, 746 F.3d 239, 243 (7th Cir. 2014) (holding that district court abused its discretion by granting summary judgment despite the fact that defendant had not yet obtained information "necessary and relevant" to his opposition). Because the parties have not yet completed fact discovery regarding the Release, GreatBanc is prevented from "present[ing] facts essential to justify its opposition" to Plaintiff's motion. Fed. R. Civ. P. 56(d).

5

While GreatBanc believes the Release's plain language encompasses GreatBanc as a releasee, *see infra* Part B, GreatBanc acknowledges that the Court could conclude that the Release's language is ambiguous. Indeed, GreatBanc may seek to make such an argument in opposition to Plaintiff's Motion, and in the alternative to its own motion, concerning the Release. To do so, however, GreatBanc needs to obtain through discovery extrinsic evidence regarding the parties' intent in entering into the Release. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) ("[E]ven when a contract is integrated on its face, if the contract is ambiguous, as a matter of law, then extrinsic and parol evidence is admissible to explain the terms of the ambiguous contract.") (citation omitted). Because discovery is incomplete, GreatBanc lacks the documents and deposition testimony from both Plaintiff and Chemonics employees it needs.

GreatBanc therefore cannot present the Court with all facts necessary to "justify its opposition," Fed. R. Civ. P. 56(d), and the Court should either deny Plaintiff's Motion without prejudice or delay briefing until the parties have completed discovery on the issue. *Prestige Capital Corp. v. Colt's Mfg. Co.*, No. 3:17-01082, 2018 WL 4288642, at *4-5 (D. Conn. Sept. 7, 2018) (slip opinion) (holding that the contracts at issue were ambiguous and granting defendant's Rule 56(d) motion because "the Court cannot resolve this issue without extrinsic evidence that has yet to be uncovered in discovery"); *see also Utica Mut. Ins. v. Munich Reinsurance Am., Inc.*, 594 Fed.Appx. 700, 704 (2d Cir. 2014) (reversing lower court's grant of summary judgment, reasoning that the contract provision that the lower court held to be unambiguous was actually ambiguous, and that the lower court needed to review extrinsic evidence after considering plaintiff-appellant's pending Rule 56(d) Motion); Rule 56(d) Motion, Dkt. 106, at 2 (proposing discovery and briefing schedule).

In short, GreatBanc requires additional discovery into the following issues to oppose Plaintiff's motion and decide whether to cross-move:

1. McMaken's education, employment history, and experience working at Chemonics;

2. the extent to which McMaken negotiated his severance agreement and release;

3. McMaken's understanding of the terms of the severance and release at the time he signed it;

4. the amount of time McMaken was allotted to consider the agreement's terms and how much of that time he took to make his decision;

5. whether McMaken read the terms of the agreement at the time he signed;

6. whether McMaken was permitted to consult with counsel and, if so, whether and to what extent he consulted with counsel;

7. whether the consideration Chemonics gave McMaken in exchange for the release was appropriate; and

8. the nature and extent of McMaken's discussions with Chemonics regarding his severance agreement and release.[4]

## B. McMaken agreed to release "Chemonics and its . . . fiduciaries" – including GreatBanc.

Even if the Court does not delay briefing, the Release's broad language encompasses GreatBanc as a releasee.

1. *GreatBanc is properly understood as one of "Chemonics['] . . . fiduciaries" because GreatBanc derived its fiduciary authority from Chemonics, which controlled the nature and scope of that authority.*

Chemonics terminated McMaken's employment in August 2011, roughly one month after the Transaction. Release, Dkt. 51-2, at 3. At the time of his firing, McMaken agreed to a "**GENERAL RELEASE**" to be "construed in the broadest possible manner." Release, Dkt. 51-

---

[4] *See generally* Rule 56(d) Motion, Dkt. 106.

7

2, at 1 (emphasis original). In it, he promised not to bring "existing claims that [he knew] about [or] those that [he did] not know about" against "*Chemonics and its* parents, subsidiaries, predecessors, successors, directors, officers, *fiduciaries*, insurers, employees and agents." Release, Dkt. 51-2, at 1 (emphasis added). Chemonics paid McMaken a month's salary – $16,063 – in exchange for this promise, which "include[d], but is not limited to, claims, demands, or actions alleging violations by any of the Releasees of the . . . *Employee Retirement Income Security Act*." *Id.* (emphasis added).[5]

Despite agreeing at the time he signed the Release that its terms would be construed in the "broadest possible" manner, McMaken now asks the Court to adopt the narrowest reading of the phrase "Chemonics and its . . . fiduciaries," arguing that GreatBanc is not a releasee because GreatBanc owes fiduciary duties *to the ESOP*, not *to Chemonics*. Pl.'s Mem. at 8-9 ("GreatBanc was a fiduciary to the Plan and its participants and beneficiaries. GreatBanc was not a fiduciary to Chemonics. . . . It cannot be a fiduciary to both as a matter of law.").[6] But Plaintiff's argument relies on a tortured reading of the phrase "Chemonics and its . . . fiduciaries" in isolation from the remainder of the Release. A more careful analysis of the context shows that GreatBanc is properly considered part of the possessive "Chemonics and its . . . fiduciaries" not because GreatBanc owes fiduciary duties *to Chemonics*, but because GreatBanc derives its own fiduciary authority *from Chemonics*, which was the architect of the ESOP's fiduciary

---

[5] McMaken also acknowledged that he had been advised "to consult with an attorney with respect to this Agreement prior to executing it" and was "offered twenty-one (21) days within which to consider this Agreement." Release, Dkt. 51-2, at 2.

[6] McMaken devotes virtually all of the Argument portion of his memorandum to explaining the various reasons why GreatBanc cannot owe fiduciary duties to Chemonics. *See generally* Pl.'s Mem. at 5-9. These arguments are immaterial given that GreatBanc *agrees and does not base its argument that it is a releasee on that premise*.

8

structure and imbued GreatBanc with fiduciary authority when it appointed GreatBanc as the ESOP's trustee.

As the plan sponsor[7] of the ESOP, Chemonics has had, since the initial establishment of the ESOP, the full authority to determine the rules governing the ESOP and the trust – including the ability to appoint the trustee and define the nature and limits of the trustee's fiduciary authority. As the Supreme Court has explained, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate . . . [a] contributory plan, a noncontributory plan, or any other type of plan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999) (alteration in original) (quotations omitted) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (same with respect to welfare plans); *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996) (same with respect to pension plans)).

Chemonics crafted the ESOP's governance structure and fiduciary framework, which are memorialized in the plan document. *See generally* Chemonics ESOP, Amended and Restated as of January 1, 2007, Dkt. 51-3 ("Plan Document"). The Plan Document, among other things, sets forth rules governing the ESOP's administration and describes the fiduciary authority that Chemonics would retain as well as that which it would delegate to others. *E.g.*, *id.* § 16(c)-(f), (j), as amended (defining fiduciary authority of the company, the fiduciary committee, and trustee). Chemonics' decision to allocate fiduciary authority to the ESOP's trustee is mirrored in the July 7, 2011 trust agreement, which further "reflect[ed] . . . the allocation of responsibilities under the Plan and Trust and in accordance with Amendments No. 5 and 6 to the Plan."

---

[7] *See* 29 U.S.C. § 1002(16)(B) ("The term 'plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer.").

Chemonics ESOP Trust Agreement, Amended and Restated as of July 7, 2011, Dkt. 51-4, at 1-2 ("Trust Agreement").

Chemonics not only distributed fiduciary authority among itself, various fiduciary committees, and the trustee, it also (through its Board) specifically selected GreatBanc to be the trustee vested with the fiduciary authority outlined in the Plan Document and Trust Agreement. May 25, 2011 Successor Trustee Engagement Agreement ("Engagement Agreement"), Dkt. 51-6, at 1 ("This Trustee Agreement is made and entered into this 25th day of May 2011, by and between GreatBanc Trust Company . . . and Chemonics."); *see also* Plan Document, Dkt. 51-3, § 2 (defining Trustee as "appointed by the Board of Directors").

As the party responsible for selecting the trustee, Chemonics itself acted in a fiduciary capacity to the ESOP and had an ongoing duty to monitor GreatBanc's performance and remove GreatBanc or modify the terms of its engagement in the event GreatBanc failed to meet its own fiduciary obligations. *E.g.*, Dept't of Labor Interpretive Bulletin, *Questions and Answers Relating to Fiduciary Responsibility Under the Employee Retirement Income Security Act of 1974*, 29 C.F.R. § 2509.75-8 ("Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees . . . ? A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary . . . to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."). The Plan Document, Trust Agreement, and Engagement Agreement declare Chemonics' ability to control the extent, nature, and duration of GreatBanc's fiduciary duties. Plan Document, Dkt. 51-3, § 19 (stating that Chemonics has full authority to "amend or terminate" the Plan Document and Trust Agreement "at any time[] by action of the Board of Directors"); Trust Agreement, Dkt. 51-4 § L, N ("The Company (through its Board of Directors)

shall have the right at any time . . . to modify, alter or amend this Agreement, in whole or in part, and to terminate the Plan and Trust," and can remove GreatBanc as trustee at any time); Engagement Agreement, Dkt. 51-6, at 1 (stating that Chemonics can remove GreatBanc as trustee at any time).

Through the Plan Document (and as reflected in the Trust Agreement), Chemonics gave GreatBanc the authority to exercise its independent fiduciary discretion to, among other things,

- acquire employer stock with employer contributions, Trust Agreement § C(2)(i); *see also* Plan Document, Amendment 5 §§ 5(a), (c), 16;

- "negotiate the July 7, 2011 Acquisition Loan, and purchase of Company Stock, at a price not exceeding Fair Market Value . . . based on the Trustee's determination (in the exercise of its reasonable judgment) that such transaction is in the best interests of the Plan and the Participants . . . . The Trustee shall have the power and authority to take any actions necessary or appropriate (including, but not limited to, the execution of documents on the Plan's behalf) to carry out its responsibilities hereunder." Plan Document, Amendment 6 § 5(f); *see also* Trust Agreement § C(2);

- sell, transfer, mortgage, pledge, lease, or otherwise dispose of trust assets other than company stock, Trust Agreement § C(2)(ii); *see also* Plan Document § 16, as amended;

- sue, defend, compromise, arbitrate, or settle lawsuits for which it may be liable, Trust Agreement § C(2)(v);

- employ service providers of the trustee's choosing, Trust Agreement § C(2)(vi); *see also* Plan Document, Amendment 6 § 5(f), Amendment 5 § 16(e); and

- hold cash temporarily and collect float, Trust Agreement § C(2)(vii); *see also* Plan Document § 16(j), Amendment 5 § 5(a).

Chemonics also restricted GreatBanc's fiduciary authority, reserving for itself or assigning to others several fiduciary functions, including

- resolving employee eligibility questions, determining account allocations, determining the amount of benefits payable to participants, authorizing and directing disbursements, establishing procedures necessary for plan administration, engaging certain service providers, interpreting the Plan

11

>  Document and Trust Agreement, and compiling records, Plan Document, Amendment 5 § 16(c); *see also* Trust Agreement § G;

- establishing a funding policy for the ESOP and reviewing the Trustee's performance, Plan Document, Amendment 5 § 16(d); *see also* Trust Agreement §§ E-G

- transacting with employer stock using assets other than employer contributions, Trust Agreement § C(1)(i); *see also* Plan Document, Amendment 5 § 5(a);

- incurring debt in connection with transactions involving employer stock, Trust Agreement § C(1)(ii); *see also* Plan Document, Amendment 5 § 5(b); and

- selling, transferring, mortgaging, pledging, leasing, or otherwise disposing of employer stock held by the trust, Trust Agreement, § C(1)(iv); Plan Document, Amendment 5 § 5(d).

To the extent Chemonics wanted to grant GreatBanc fiduciary authority that it had otherwise reserved for itself, it could do so at any time. Trust Agreement, Dkt. 51-4, at 5 ("The Board of Directors may authorize the Trustee in writing to act on any matter (or class of matters) with respect to which directions or instructions from the Board of Directors are called for hereunder without specific directions or other instructions from the Board of Directors."); Plan Document § 16(j) ("The Company from time to time may allocate to . . . any other persons or organizations any of its rights, powers, duties and responsibilities . . . to be so delegated under ERISA.").

In short, at the time the ESOP was established, Chemonics had plenary power to control the distribution of fiduciary authority among itself and others as it saw fit. Chemonics delegated certain powers to GreatBanc and retained others as described above. As an appointing fiduciary, Chemonics was responsible for monitoring GreatBanc's performance and modifying the terms of its engagement – including removing GreatBanc – as it pleased. Given this relationship – whereby GreatBanc's fiduciary status is dependent on Chemonics' grants of fiduciary authority

and ongoing monitoring of GreatBanc's performance – a natural reading of the possessive phrase "Chemonics and its . . . fiduciaries" would necessarily include GreatBanc. This is especially true here, where the parties have agreed to construe the Release's language in the "broadest possible manner." Release, Dkt. 51-2, at 1. Plaintiff's singular focus on answering a question no one else is asking – Does GreatBanc owe fiduciary duties to Chemonics or to the ESOP? – is simply irrelevant.

At least one other court has held that similar releases encompass both plan sponsor and ESOP trustee. In *Innis v. Bankers Trust Company of South Dakota*, the district court granted summary judgment to an ESOP trustee, Bankers Trust, after finding that the plaintiff class representative agreed to release her claims against the trustee in exchange for a severance payment at the time she separated from the company. Dkt. 139 at 1 (order granting defendant's motion for summary judgment). The court found that the release was valid and enforceable after considering the factors described *supra* in Part A, that the parties "intended a broad release of claims arising from [plaintiff's] employment," and that the broad release "unambiguously discharge[d] the ERISA claims [plaintiff] brings against Bankers Trust," despite the fact that the release in question – like the Release here – did not expressly identify the trustee. *Id.* at 9-14, 15.

    2.    *Interpreting "Chemonics and its . . . fiduciaries" to include GreatBanc is consistent with the Release's other provisions.*

Faced with the analysis presented above, McMaken may argue that the phrase "Chemonics and its . . . fiduciaries" applies not to ERISA fiduciaries but only to those with corporate fiduciary duties to Chemonics under state or common law. This is untenable. Under District of Columbia law,[8] contracts should be read as a whole, accounting for context, to give

---

[8] The Release is "governed by and construed according to the laws of the District of Columbia, without regard to its conflict of laws principles." Release, Dkt. 51-2, at 2. *Eagle Air Transp.,*

13

meaning to all of the contract's provisions. *Steele Founds., Inc. v. Clark Constr. Grp.*, Inc., 937 A.2d 148, 154 (D.C. 2007) ("Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract."); *Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 982 A.2d 691, 716 (D.C. 2009) (looking beyond "compelling" ordinary meaning because "interpretation is a holistic endeavor"); *Gryce v. Lavine*, 675 A.2d 67, 70 (D.C. 1996) (holding that courts "view the contract in the context of the circumstances in which it was made, including the legal context"). Applying these principles demonstrates that "fiduciaries" must refer to something other than *corporate* fiduciaries for two reasons.

First, Delaware law (where Chemonics is incorporated) assigns corporate fiduciary duties only to a corporation's directors, officers, and key management employees. *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980); *see also Mitchell Lane Publishers, Inc. v. Rasemas*, C.A. No. 9144-VCN, 2014 WL 4925150, at *4 (Del. Ch. Sept. 30, 2014). Under the Release, McMaken separately waived all claims against "directors, officers, fiduciaries, . . . [and] employees." Release, Dkt. 51-2, at 1. Thus, reading "fiduciaries" to mean only "corporate fiduciaries" renders "fiduciaries" superfluous and therefore meaningless because any corporate fiduciaries are already released by the phrase "directors, officers, . . . [and] employees." The only non-redundant way to read "fiduciaries" in this context is to read it as referring to someone *other than* Chemonics' directors, officers, and employees. In the context of an ESOP-owned corporation whose employee-owners' shares are held by an ERISA-governed plan represented by a trustee subject to ERISA fiduciary duties, the term "fiduciaries" is

---

*Inc. v. Nat'l Aerotech Aviation Del., Inc.*, 75 F. Supp. 3d 883, 895 (N.D. Ill. 2014) ("'Illinois courts generally adhere to a contract's choice of law provisions.'") (quoting *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007)).

logically read as a reference to ERISA fiduciaries. That the Release also states that McMaken is releasing all "actions alleging violations . . . of . . . the Employee Retirement Income Security Act" lends additional credence to this straightforward reading. *Id.* at 1.

Second, this reading is consistent with the rest of the agreement when read as a whole. For example, other parts of the agreement evidence an intention to encompass parties outside of Chemonics' corporate umbrella within the terms of the release, such as Chemonics' "agents" and "insurers." *Id*. Therefore, reading "fiduciaries" to encompass GreatBanc, even though it lies outside Chemonics' corporate family, is fully consistent with the agreement's other terms and intentionally broad scope.

### III. CONCLUSION

The Court should delay deciding the Release issue until after the parties have completed necessary fact discovery, at which time GreatBanc will be able to fully oppose the motion and decide whether to cross-move. Not only is it proper under Rule 56(d), but deferring the issue to a later date would also be an efficient use of the Court's and parties' time and resources. The Court should therefore deny Plaintiff's motion without prejudice or stay briefing according to the proposed discovery and briefing schedule in GreatBanc's Rule 56(d) Motion, Dkt. 106, at 1-2.

Should the Court believe it most efficient to decide the issue now, the "**GENERAL RELEASE**" that McMaken gave to "Chemonics and its . . . fiduciaries" under ERISA in exchange for $16,000 and that he agreed should be "construed in the broadest possible manner" fairly encompasses GreatBanc as a releasee under basic tenets of contract interpretation and in light of Chemonics' plenary authority as plan sponsor and appointing fiduciary to control the nature and extent of GreatBanc's fiduciary responsibility. Release, Dkt. 51-2 at 1. The Court should therefore deny Plaintiff's motion for partial summary judgment.